**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

| | |
|---|---|
| **ALLISON HARBIN,** } | |
| } | |
| **Plaintiff,** } | |
| } | |
| **v.** } | **Case No.:  2:15-cv-01069-RDP** |
| } | |
| **ROUNDPOINT MORTGAGE** } | |
| **COMPANY, et al.,** } | |
| } | |
| **Defendants.** } | |

## <u>MEMORANDUM OPINION</u>

This case is before the court on the Motion for Summary Judgment of Defendant Roundpoint Mortgage Company ("RoundPoint") (Doc. # 38) and the Motion for Summary Judgment of Defendant First Guaranty Mortgage Corporation ("First Guaranty" and collectively "Defendants") (Doc. # 46). The Motions (Doc. # 38; 46) have been fully briefed, and the parties have filed evidentiary submissions. (Docs. # 39-45; 47-51; 65-67). After careful review, and for the following reasons, the court finds that the RoundPoint's Motion (Doc. # 38) is due to be granted and that First Guaranty's Motion (Doc. # 46) is due to be granted.

## I. Relevant Undisputed Facts[1]

On November 16, 2012, Plaintiff Allison Harbin ("Plaintiff" or "Harbin") executed a promissory note (the "Note") in favor of First Guaranty in the amount of $116,999.00. (Docs. # 39 at ¶ I.3; 40-1 at ¶ 6; 40-1 at p. 11-12; 65 at ¶ II.a.3). A mortgage on Harbin's property at

---

[1] The facts set out in this opinion are gleaned from the parties' submissions of facts claimed to be undisputed, their respective responses to those submissions, and the court's own examination of the evidentiary record. All reasonable doubts about the facts have been resolved in favor of the nonmoving party. *See Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d 1220, 1224 (11th Cir. 2002). These are "facts" for summary judgment purposes only. They may not be the actual facts that could be established through live testimony at trial. *See Cox v. Admr. U.S. Steel & Carnegie Pension Fund*, 17 F.3d 1386, 1400 (11th Cir. 1994).

245 Stonecreek Way, Helena, Alabama, (the "Mortgage") secured the Note. (Docs. # 39 at ¶ I.4; 40-1 at ¶ 7; 40-1 at p. 14-22; 65 at ¶ II.a.4). RoundPoint acquired the servicing rights for the Loan on December 13, 2012. (Docs. # 39 at ¶ I.7; 40-1 at ¶ 10; 40-1 at p. 26-30; 65 at ¶ II.a.7).

On October 1, 2014, Harbin defaulted on the Note. (Docs. # 39 at ¶¶ I.2, I.8; 40-1 at ¶¶ 11, 29; 40-1 at p. 33, 42; 65 at ¶¶ II.a.2, II.a.8). Starting in April 2013, RoundPoint sent Harbin at least twenty-five letters, encouraging her to contact RoundPoint to speak with them about mortgage assistance. (Docs. # 39 at ¶ I.9; 40-1 at ¶ 12; 40-1 at p. 41-155; 40-2; 41-1 at p. 1-65; 65 at ¶ II.a.9). Harbin did not respond to RoundPoint's letters by submitting a loss mitigation package until 2015. (Docs. # 39 at ¶ I.10; 65 at ¶ II.a.10).

On February 20, 2015, RoundPoint notified Harbin that it was accelerating the Loan and initiating the foreclosure process. (Docs. # 40-1 at ¶ 13; 41-1 at p. 67). At that point, the foreclosure sale was scheduled for April 27, 2015. (Doc. # 41-1 at p. 67-69). In exchange for one hundred dollars, Harbin received a forbearance agreement from RoundPoint, which suspended Harbin's foreclosure until June 3, 2015. (Docs. # 39 at ¶¶ I.13-15; 40-1 at ¶¶ 15-17; 41-1 at p. 77, 82; 65 at ¶¶ II.a.13-15).

Harbin submitted a second loss mitigation package on May 25, 2015. (Docs. # 39 at ¶ I.16; 40-1 at ¶ 18; 41-1 at p. 84-114; 41-2 at p. 1-83; 65 at ¶ II.a.16). On May 29, 2015, she called RoundPoint to inquire about the status of her loss mitigation package and spoke with RoundPoint employee Daniel Gerstenfeld ("Gerstenfeld"). (Docs. # 39 at ¶¶ I.17-18; 40-1 at ¶¶ 19-20; 41-2 at p. 85-86; 65 at ¶¶ II.a.17-18; 65-1; 65-2). Gerstenfeld was not Harbin's assigned point of contact at RoundPoint (Docs. # 39 at ¶ I.18; 40-1 at ¶ 20; 65 at ¶ II.a.18); however, Harbin had been unable to reach her point of contact, Danyelle Gentry. (Docs. # 65-1 at p. 3, 8-9; 65-2 at p. 1).

During this phone conversation, Gerstenfeld confirmed that RoundPoint had received documentation from Harbin and informed Harbin that she needed to submit two more items to RoundPoint in order to complete her loss mitigation, or "work out," package. (Doc. # 65-2 at p. 1-2). Harbin explained to Gerstenfeld that there was a sale date on her house for June 3, 2015, that she was "looking for more time," and that she "need[ed] the sale date pushed back to figure this out." (*Id.* at p. 3). Gerstenfeld told Harbin to "get that documentation into us and then we will try to do what we can to get that sale postponed." (*Id.* at p. 3-4). After Harbin stated that another RoundPoint employee "said that it[2] would postpone [the sale]," Gerstenfeld said that he "had someone else look over the account with [him] and they are saying that [the sale] is still set to go" and then went to find another person to "give [him] more clarification." (*Id.* at p. 4). Gerstenfeld next "had someone else look[] over the account" with him and told Harbin, "It does look like [the sale] has been suspended temporarily. Just go ahead and send in that remaining documentation that I went over with you." (*Id.*). Harbin asked Gerstenfeld to confirm in an email that the sale date of her home had been temporarily postponed. (*Id.* at p. 4-5).

At 3:10 p.m. on the same day that Harbin spoke with Gerstenfeld (*i.e.*, May 29, 2015), Gerstenfeld emailed Harbin and stated that two documents (page two of one of her bank account statements and Form 4506T) were needed for her loss mitigation package. (Doc. # 65-1 at p. 1). Ten minutes later, Harbin responded to Gerstenfeld and stated,

> During our conversation I asked you about the postponement of the June 3rd sale day in which you confirmed after speaking with another constituent of Roundpoint Mortgage. You stated it had been temporarily postponed and I asked you to also include that confirmation within your email in which you agreed. Please confirm the sale date on my house has been postponed.

---

[2] Presumably, "it" means completion of the loss mitigation package.

(*Id.*).   At 3:45 p.m., Harbin again emailed Gerstenfeld with documents to "complete [her] Workout Package" and requested that he "please confirm that [the] sale date of June 3rd has been postponed . . . ."   (*Id.* at p. 2).   At 3:51 p.m., Gerstenfeld responded to Harbin stating, "The Foreclose [*sic*] has been suspended temporarily."   (*Id.*).

On June 2, 2015, RoundPoint sent a letter to Harbin stating that her loss mitigation application was incomplete because it was missing (1) page two of a bank account statement and (2) a copy of her homeowners' association ("HOA") bill.[3]   (Doc. # 41-2 at p. 88).   The letter also stated that her home was scheduled for a foreclosure date of June 3, 2015.   (*Id.*).   On June 3, 2015, the foreclosure sale was held, and First Guaranty purchased Harbin's property.   (*Id.* at p. 92-95).   As of the date of the foreclosure sale, Harbin had not submitted a complete loss mitigation application to RoundPoint and had valid HOA liens on her property.   (Docs. # 39 at ¶¶ I.29-30; 40-1 at ¶ 30; 45-1; 65 at ¶¶ II.a.29-30).   Because of these HOA liens, Harbin could not have conveyed clear title to her property, which would have been necessary for her to receive approval for a loan modification from RoundPoint.   (Docs. # 39 at ¶ I.29; 65 at ¶ II.a.29).   On June 25, 2015, Plaintiff filed this action against RoundPoint, asserting claims for breach of contract (Count I), negligence/wantonness (Count II), fraud (Count III), breach of fiduciary duty (Count IV), and defamation (Count V).[4]   (Docs. # 1; 29; 39 at ¶ I.1; 65 at ¶ II.a.1).

In June 2016, RoundPoint stopped servicing the Loan, and the servicing of the Loan was transferred to Fay Servicing ("Fay") on behalf of First Guaranty.   (Docs. # 39 at ¶ I.35; 40-1

---

[3] Harbin had failed to disclose in her initial loss mitigation application that she was subject to an HOA and that the HOA held a lien on her property.   (Docs. # 39 at ¶ I.26; 65 at ¶ II.a.26).

[4] In Plaintiff's Response in Opposition to Defendants' Motions for Summary Judgment, Plaintiff has indicated that she wishes to voluntarily dismiss her claims for breach of fiduciary duty (Count IV) and defamation (Count V). (Doc. # 65 at p. 15, 17).   Plaintiff has also indicated she will voluntarily dismiss her claim against RoundPoint, but not First Guaranty, for negligence/wantonness (Count II).   (*Id.* at p. 16).   Accordingly, the claims that Plaintiff wishes to pursue against RoundPoint are breach of contract (Count I) and fraud (Count III).   (Docs. # 65; 66 at p. 1 n.1).

¶ 32; 45-2 at p. 8; 47 at ¶ I.1; 51-6 at ¶ 6; 65 at ¶¶ II.a.35, II.b.1).  Harbin was sent a Notice to Vacate Letter on July 20, 2016.  (Doc. # 51-6 at p. 14-15).  On July 22, 2016, First Guaranty filed a complaint against Harbin for ejection ("Ejection Complaint") in the Circuit Court of Shelby County, Alabama.  (*Id.* at p. 17-18).

A process server attempted service of the Ejectment Complaint on Harbin on July 24, 2016, August 1, 2016, August 6, 2016, and August 7, 2016.  (Docs. # 47 at ¶¶ I.8-11; 51-6 at p. 26; 65 at ¶¶ II.b.8-11).  On August 1, 2016, the process server recorded that the note he had left on July 24, 2016 was still on Harbin's garage door and it appeared that "[n]o one has been coming in and out" of Harbin's house.  (Doc. # 51-6 at p. 26).  When the process server returned on August 6, 2016, his note was gone, and he noticed that the power and water had been turned off at Harbin's property.  (*Id*).  The process server left another note for Harbin to call him.  (*Id.*).  Harbin was successfully served at a McDonald's restaurant on August 7, 2016.  (Doc. # 51-6 at p. 26).

On August 6, 2016, the locks to the front and back doors of Harbin's property were rekeyed so that Harbin did not have access to the property.  (Docs. # 47 at ¶¶ I.12, I.14; 51-6 at ¶ 15; 65 at ¶¶ II.b.12, II.b.14).  Harbin would have had access to the property through the garage door if the power had been turned on.  (Docs. # 47 at ¶ I.17; 65 at ¶ II.b.17).  Counsel for Harbin notified counsel for RoundPoint that the locks had been changed at the property on August 9, 2016.  (Docs. # 47 at ¶ I.13; 65 at ¶ II.b.13).  On August 10, 2016, the locks to the front and back doors of Harbin's property were rekeyed, and a key was left under a flower pot so that Harbin would have access to the property.  (Docs. # 47 at ¶ I.19; 50-4 at p. 23; 56-1 at p. 28-35; 65 at ¶ II.b.19).  The property was again rekeyed on August 15, 2016 because the August 10, 2016 rekeying was not satisfactory to Harbin.  (Docs. # 47 at ¶ I.20; 50-4 at p. 23-25; 65 at ¶ II.b.20).

Harbin's personal property was not disturbed during the rekeying processes. (Doc. # 50-4 at p. 25). As of August 15, 2016, Harbin has been able to access her property. (Doc. # 50-4 at p. 24-25).

On September 6, 2016, Harbin filed her First Amended Complaint, which added First Guaranty as a defendant to this action. (Doc. # 29). In addition to asserting all of the claims from the initial Complaint (Doc. # 1) against First Guaranty, Plaintiff included claims against First Guaranty for conversion (Count VI), unjust enrichment (Count VII), trespass (Count VIII), and intentional infliction of severe emotional distress (Count IX).[5] (Docs. # 20 at ¶ 21; 29). In the First Amended Complaint, Harbin alleges that she has suffered mental anguish and emotional distress as a result of the foreclosure of her property. (Doc. # 29 at p. 15-16). She has not sought any medical treatment or counseling services (free or otherwise) in relation to these alleged damages. (Docs. # 39 at ¶¶ I.32-33; 42-1 at p. 66; 65 at ¶¶ II.a.32-33).

The Ejection Complaint was dismissed on September 11, 2016. (Doc. # 56-1 at p. 37). Fay, on behalf of First Guaranty, has ensured that the ejection process against Harbin will not be initiated again prior to the resolution of this case. (Docs. # 47 at ¶ I.24; 56-1 at ¶ 23; 65 at ¶ II.b.24). Currently, Harbin remains in possession of the property (Docs. # 39 at ¶ I.31; 40-1 at ¶ 31; 44-1 at p. 9; 65 at ¶ II.a.31); however, she does not stay at her home the majority of the time. (Docs. # 39 at ¶ I.34; 44-1 at p. 9-10; 65 at ¶ II.a.34).

## II. Summary Judgment Standard

Under Federal Rule of Civil Procedure 56, summary judgment is proper "if the pleadings,

---

[5] In Plaintiff's Response in Opposition to Defendants' Motions for Summary Judgment, Plaintiff has indicated that she wishes to voluntarily dismiss her claims for breach of fiduciary duty (Count IV), defamation (Count V), and intentional infliction of severe emotional distress (Count IX). (Doc. # 65 at p. 15, 17). Thus, the claims that Plaintiff wishes to pursue against First Guaranty are breach of contract (Count I), negligence/wantonness (Count II), fraud (Count III), conversion (Count VI), unjust enrichment (Count VII), and trespass (Count VIII). (Docs. # 65; 67). Plaintiff continues to seek punitive damages and damages for emotional distress and mental anguish. (Doc. # 65 at p. 17-19).

depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The party asking for summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings or filings which it believes demonstrate the absence of a genuine issue of material fact. *Id.* at 323. Once the moving party has met its burden, Rule 56 requires the non-moving party to go beyond the pleadings and -- by pointing to affidavits, or depositions, answers to interrogatories, and/or admissions on file -- designate specific facts showing that there is a genuine issue for trial. *Id.* at 324.

The substantive law will identify which facts are material and which are irrelevant. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the non-movant. *See Allen v. Bd. of Pub. Educ. for Bibb Cnty.*, 495 F.3d 1306, 1314 (11th Cir. 2007); *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *See id.* at 249.

When faced with a "properly supported motion for summary judgment, [the non-moving party] must come forward with specific factual evidence, presenting more than mere allegations." *Gargiulo v. G.M. Sales, Inc.*, 131 F.3d 995, 999 (11th Cir. 1997). As *Anderson* teaches, under Rule 56(c) a plaintiff may not simply rest on his allegations made in the complaint; instead, as the party bearing the burden of proof at trial, he must come forward with

at least some evidence to support each element essential to his case at trial. *See Anderson*, 477 U.S. at 252. "[A] party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial.'" *Id.* at 248 (citations omitted).

Summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322. "Summary judgment may be granted if the non-moving party's evidence is merely colorable or is not significantly probative." *Sawyer v. Sw. Airlines Co.*, 243 F. Supp. 2d 1257, 1262 (D. Kan. 2003) (citing *Anderson*, 477 U.S. at 250-51).

"[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249. "Essentially, the inquiry is 'whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Sawyer*, 243 F. Supp. 2d at 1262 (quoting *Anderson*, 477 U.S. at 251-52); *see also LaRoche v. Denny's, Inc.*, 62 F. Supp. 2d 1366, 1371 (S.D. Fla. 1999) ("The law is clear . . . that suspicion, perception, opinion, and belief cannot be used to defeat a motion for summary judgment.").

## III.   Analysis

Based on Plaintiff's indication that she desires to voluntarily dismiss certain of her claims, the court finds that Plaintiff's claims for breach of fiduciary duty (Count IV), defamation (Count V), and intentional infliction of severe emotional distress (Count IX) are due to be dismissed. (Doc. # 65 at p. 15, 17). Plaintiff's claim for negligence/wantonness (Count II)

against RoundPoint is also due to be dismissed in accordance with Plaintiff's indication of voluntary dismissal. (*Id.* at p. 16). The court discusses the remaining claims alleged against RoundPoint and First Guaranty, in turn.

### A. Plaintiff's Claims against RoundPoint

Plaintiff claims that RoundPoint breached a contract with Plaintiff (Count I) and committed fraud (Count III). (Doc. # 29). Both of these allegations are explored below.

#### 1. Breach of Contract Claim (Count I)

Plaintiff argues that RoundPoint was contractually prohibited from conducting the foreclosure sale on June 3, 2015 and that RoundPoint breached this agreement when it conducted the foreclosure sale on that date. (Doc. # 65 at p. 17). Plaintiff contends that her "obligation under the agreement to postpone the sale was to complete the loan modification package," but her obligation to perform was excused when RoundPoint conducted the foreclosure sale. (*Id.*). RoundPoint counters that no contract was formed postponing the foreclosure past June 3, 2015. (Doc. # 66 at p. 8-10). The court agrees with RoundPoint.

"'The elements of a breach-of-contract claim under Alabama law are (1) a valid contract binding the parties; (2) the plaintiffs' performance under the contract; (3) the defendant's nonperformance; and (4) resulting damages.'" *Shaffer v. Regions Fin. Corp.*, 29 So. 3d 872, 880 (Ala. 2009) (quoting *Reynolds Metals Co. v. Hill*, 825 So. 2d 100, 105 (Ala. 2002)). The formation of a valid contract under Alabama law requires (1) an offer and an acceptance, (2) consideration, and (3) mutual assent to the terms essential to the formation of a contract. *Ex parte Grant*, 711 So. 2d 464, 465 (Ala. 1997). "'[T]o constitute consideration for a promise, there must have been an act, a forbearance, a detriment, or a destruction of a legal right, or a return promise, bargained for and given in exchange for the promise.'" *Id.* (quoting *Smoyer v.*

*Birmingham Area Chamber of Commerce*, 517 So.2d 585, 587 (Ala.1987)). "Alabama's Statute of Frauds provides that any agreement for the sale of lands, or any interest therein 'is void unless such agreement or some note or memorandum thereof expressing the consideration is in writing.'" *Rice v. Barnes*, 149 F. Supp. 2d 1297, 1301 (M.D. Ala. 2001) (quoting Ala. Code § 8-9-2 (1975)).

As an initial matter, Plaintiff has not provided the court with Rule 56 evidence that a valid contract between RoundPoint and Harbin postponing the June 3, 2015 foreclosure date was formed. If Plaintiff's position is that submission of a solicitation of a loan modification application constituted an offer or an acceptance of an offer, that argument is off the mark. *See Lambert v. First Fed. Mortg.*, 47 F. Supp. 3d 1310, 1318 (N.D. Ala. 2014) (explaining that, under Alabama law, an application is "not evidence of a valid, binding contract"). First, Plaintiff never completed the application, *i.e.*, she never provided RoundPoint with all required documentation. By insisting upon additional information from Plaintiff as part of her application, RoundPoint never accepted the offer. *See United Steelworkers of Am., AFL-CIO v. O'Neal Steel, Inc.*, 321 F. Supp. 235, 238 (N.D. Ala. 1969) ("An offer must be made and accepted according to its terms for a contract to come into existence . . . ."). Second, if Plaintiff contends submission of a valid loan modification application was acceptance of an offer, it follows that the incomplete application cannot be viewed as a valid acceptance (or that such a submission constituted a counter-offer which was rejected when RoundPoint insisted on submission of additional materials). *Cf. Lambert*, 47 F. Supp. 3d at 1318.

Alternatively, if Plaintiff contends the conversations between Plaintiff and RoundPoint employee Gerstenfeld could be viewed as Plaintiff's evidence of an offer and acceptance, this argument also misses the mark. These conversations were too vague and lacking in material

terms to constitute an offer or, for that matter, an acceptance.[6]  *See Macon Cty. Greyhound Park, Inc. v. Knowles*, 39 So. 3d 100, 108 (Ala. 2009) ("[A]ny contract must express all terms essential to the transaction with definiteness sufficient to enable a court to enforce the parties' agreement.").  Furthermore, these discussions did not form an enforceable agreement to postpone the foreclosure sale date.  *See id.*

Moreover, even if there was an offer and acceptance (and, to be clear, there was not), Plaintiff provides no suggestion as to what equates to consideration for this alleged contract.  In exchange for its alleged agreement to further postpone the foreclosure sale date, RoundPoint did not receive any payment or benefit from Harbin.[7]  *Cf.  Star Props., LLC v. Kirby*, No. 2:14-cv-01665-TMP, 2017 U.S. Dist. LEXIS 136001, at *39 (N.D. Ala. May 16, 2017), *adopted by* No. 2:14-cv-01665-KOB, 2017 U.S. Dist. LEXIS 134898, 2017 WL 3614275 (N.D. Ala. Aug. 23, 2017) ("Submitting an application is not a 'detriment.'  In the absence of consideration for the alleged agreement to forbear foreclosure during the application process, no enforceable contract to forbear was formed.").  Some form of a bargained-for exchange is required for the second forbearance agreement to be valid, and this requirement did not occur.  *See McGowan v. Homeward Residential, Inc.*, 500 F. App'x 882, 884-85 (11th Cir. 2012) ("[F]orbearance agreements are unenforceable for lack of consideration under the pre-existing duty rule, which provides that '[a]n agreement on the part of one to do what he is already legally bound to do is

---

[6] Plaintiff appears to argue that Gerstenfeld's May 29, 2015 statement that "[t]he Foreclose [*sic*] has been suspended temporarily" created a binding contract to postpone the foreclosure sale date.  (Doc. # 65 at p. 9-15).  The court finds this is a unilateral statement, not an acceptance of an offer.

Furthermore, this argument creates Statute of Frauds concerns under Alabama law because the essential terms of this alleged agreement, such as the end date of the postponement, are not in writing.  *See DeFriece v. McCorquodale*, 998 So. 2d 465, 471 (Ala. 2008) ("Although a writing relied on to satisfy the Statute of Frauds need not be a complete contract, it must contain the essential terms of the alleged contract, namely, an offer and an acceptance, consideration, and mutual assent to the essential terms of the agreement.") (internal quotations omitted).

[7] In contrast, Plaintiff paid one hundred dollars in consideration to finalize the forbearance agreement that postponed the foreclosure date from April 27, 2015 to June 3, 2015.  (Docs. # 39 at ¶¶ I.13-15; 40-1 at ¶¶ 15-17; 41-1 at p. 77, 82; 65 at ¶¶ II.a.13-15).

not a sufficient consideration for the promise of another.'").[8] Without consideration, this alleged agreement did not create a valid contract. *See Ex parte Grant*, 711 So. 2d at 465.

Finally, even if a valid contract postponing the June 3, 2015 sale date was formed (and, to be clear, there was not), on Plaintiff's own admission, she did not complete her required performance under the alleged contract. (Doc. # 65 at p. 17). Plaintiff's arguments are circular: she claims that her "performance" under the alleged contract to postpone the June 3, 2015 foreclosure date was to complete the loss mitigation package but that her performance was excused when the foreclosure sale occurred on June 3, 2015. (*Id.*). Plaintiff's rationale is analogous to someone claiming that she agreed to purchase an item from a sales clerk, but the sales clerk refused to give her the item after Plaintiff refused to pay for the item. Plaintiff's breach of contract claim cannot survive due to her own nonperformance. *See Shaffer*, 29 So. 3d at 880. Because Plaintiff has not demonstrated a genuine issue of material fact regarding her breach of contract claim, this claim is due to be dismissed. *See Celotex Corp.*, 477 U.S. at 322.

### 2.    Fraud Claim (Count III)

Plaintiff alleges that RoundPoint committed fraud because it misrepresented the state of the foreclosure and represented to her that the June 3, 2015 foreclosure *would be* postponed. (Doc. # 29 at ¶¶ 68-71). Defendants contend that Plaintiff's claim should be categorized as a promissory fraud claim, not a fraud claim. (Docs. # 39 at p. 8; 66 at p. 3-6). Regardless of its categorization, Plaintiff's fraud claim is due to be dismissed.

The elements of fraud include the following:

> (1) a false representation (2) of a material existing fact (3) relied upon by the plaintiff (4) who was damaged as a proximate result of the misrepresentation. *Earnest v. Pritchett-Moore, Inc.*, 401 So. 2d

---

[8] *McGowan* applied Georgia law; however, the same concept applies under Alabama law. *See Garrett v. Mathews*, 474 F. Supp. 594, 598 (N.D. Ala. 1979), *aff'd*, 625 F.2d 658 (5th Cir. 1980) (noting that the concept that pre-existing duties "are not consideration for a contract is basic hornbook law").

> 752 (Ala. 1981). If fraud is based upon a promise to perform or abstain from performing in the future, two additional elements must be proved: (1) the defendant's intention, at the time of the alleged misrepresentation, not to do the act promised, coupled with (2) an intent to deceive. *Clanton v. Bains Oil Co.*, 417 So. 2d 149 (Ala. 1982).

*Coastal Concrete Co. v. Patterson*, 503 So. 2d 824, 826 (Ala. 1987); *see* § 6-5-101, Ala. Code 1975 (stating the elements of fraud). Furthermore, "[a]ny species of fraud based on the promise to do something in the future in this case would be a claim of promissory fraud." *Southland Bank v. A & A Drywall Supply Co.*, 21 So. 3d 1196, 1211 (Ala. 2008). Here, Plaintiff's First Amended Complaint *potentially* alleges two misrepresentations: (1) "on or about May 29, 2015, the Defendant misrepresented the state of the foreclosure to the Plaintiff" and (2) "The Defendant RoundPoint represented that the June 3, 2015, foreclosure *would be* postponed." (Doc. # 29 at ¶ 69-70) (emphasis added). The latter alleged misrepresentation is clearly "based on the promise to do something in future" and is, therefore, a claim of promissory fraud. *Southland Bank*, 21 So. 3d at 1211.

"[T]o support a claim of promissory fraud, the plaintiff must show that at the time of the alleged misrepresentation (that is, the promise), the defendant intended not to do the act or acts promised, but intended to deceive the plaintiff." *Goodyear Tire & Rubber Co. v. Washington*, 719 So. 2d 774, 776 (Ala. 1998); *cf. Spring Hill Lighting & Supply Co. v. Square D Co.*, 662 So. 2d 1141, 1149 (Ala. 1995) ("In promissory fraud, the material existing fact that is misrepresented is the defendant's state of mind, when the defendant represents that he intends to perform some act although he does not in fact intend to perform it."). The plaintiff has the burden to prove that the defendant intended to deceive him when the promise was made. *Goodyear Tire & Rubber Co.*, 719 So. 2d at 776. "The plaintiff cannot meet his burden merely by showing that the alleged promise ultimately was not kept; otherwise, any breach of contract would constitute a fraud." *Id.*

A jury does not have "'untrammeled discretion to speculate upon the existence of [the requisite] intent [for promissory fraud];'" rather, "there must be substantial evidence of a fraudulent intent that existed when the promise was made." *Id.* (quoting *Martin v. American Medical Int'l, Inc.*, 516 So. 2d 640 (Ala. 1987)). In this case, Plaintiff has provided no Rule 56 evidence that RoundPoint had an "intent to deceive" Plaintiff when it allegedly represented that the foreclosure would be postponed; therefore, Plaintiff's promissory fraud claim is due to be dismissed. *See Southland Bank*, 21 So. 3d at 1214 (holding that the likely possibility that the defendant's employee "may have recklessly made statements beyond his authority" and "may have violated [the defendant's] procedures and policies" does not tend to show that the employee intended to deceive the plaintiff).

To the extent that Plaintiff's fraud claim is based on an alleged misrepresentation concerning "the state of the foreclosure" (Doc. # 29 at ¶ 69), this claim also misses the mark because Plaintiff has not shown substantial evidence of a false representation or reasonable reliance on the alleged misrepresentation. *See Luck v. Primus Auto. Fin. Servs., Inc.*, 763 So. 2d 243, 245-46 (Ala. 2000) ("A party alleging fraud by misrepresentation must prove four elements: (1) that the defendant made a false representation concerning an existing material fact; (2) that the defendant made that misrepresentation while knowing that it was false, or made it recklessly, or made it with no knowledge as to its truth or falsity; (3) that the plaintiff reasonably relied on the misrepresentation; and (4) that the plaintiff incurred damage proximately caused by the reliance."). Plaintiff argues that Gerstenfeld's May 29, 2015 statement that the foreclosure had "been suspended temporarily" was a false representation. (Doc. # 65 at p. 10) (citing Doc. # 65-1 at p. 1-2). However, Plaintiff does not dispute that, on May 29, 2015, a thirty-day forbearance, which temporarily suspended the foreclosure, was put in place. (Docs. # 39 at

¶¶ I.13-15; 40-1 at ¶ 22; 65 at ¶¶ II.a.13-15).  Plaintiff cannot claim that the representation that the foreclosure was temporarily suspended as of May 29, 2015 was a false representation while also admitting to its accuracy.

Notably, Plaintiff does not provide any Rule 56 evidence that shows that Gerstenfeld stated that the June 3, 2015 foreclosure sale date was postponed or even used the word "postponed."  (*See* Docs. # 65-1; 65-2).  Rather, Plaintiff insinuates that the context surrounding Gerstenfeld's statement that the foreclosure was "suspended temporarily" led her to believe that the June 3, 2015 sale date had been postponed.  (Doc. # 65 at p. 8).  Plaintiff's own misunderstanding or inference does not support a claim of fraud.  *See Shewmake v. Anderson*, No. 2:09-cv-2208-RDP, 2012 WL 5378942, at *6 (N.D. Ala. Oct. 30, 2012) (explaining that a plaintiff cannot support a fraud claim based on her own misunderstanding).  Additionally, Plaintiff's reliance on such an inference was not reasonable under the circumstances or consistent with the Rule 56 evidence.  Harbin asked Gerstenfeld multiple times to confirm her alleged understanding from their phone conversation that the sale date of June 3, 2015 was postponed.  (Doc. # 65-1 at p. 1-2).  Gerstenfeld never did so.  (*See id.*).  Instead, Gerstenfeld merely stated that the foreclosure was "suspended temporarily," a statement that was consistent with their phone conversation where Gerstenfeld said that the foreclosure was "temporarily suspended."  (Docs. # 65-1 at p. 2; 65-2 at p. 4).  Ultimately, although Plaintiff purportedly inferred that the June 3, 2015 sale date was postponed, she never received confirmation from Gerstenfeld that her belief was accurate.  (*See* Doc. # 65-1 at p. 1-2).  Because substantial evidence does not support a fraud or promissory fraud claim, Plaintiff's fraud claim (Count III) is due to be dismissed in its entirety.  *See Celotex Corp.*, 477 U.S. at 322.

### B.      Plaintiff's Claims against First Guaranty

Plaintiff claims that First Guaranty is liable to her for breach of contract (Count I), negligence/wantonness (Count II), fraud (Count III), conversion (Count VI), unjust enrichment (Count VII), and trespass (Count VIII). Plaintiff's breach of contract (Count I) and fraud (Count III) claims are due to be dismissed for the same reasons (discussed above) as those same claims against RoundPoint do not pass muster.[9] The court discusses the remaining claims against First Guaranty below.

### 1.      Validity of the Foreclosure

Although Plaintiff does not specifically allege wrongful foreclosure as a separate claim, Plaintiff claims that "Defendants wrongfully foreclosed on the Plaintiff's home" in her negligence/wantonness claim. (Doc. # 29 at ¶ 59; *see id.* at ¶ 36). Similarly, although Plaintiff does not directly assert that the foreclosure sale is void or voidable, further analysis of the validity of the foreclosure sale is necessary so that the court can determine what rights First Guaranty and Plaintiff had regarding the property when the lockout occurred. *See, e.g.*, *In re McKinney*, 174 B.R. 330, 334 (Bankr. S.D. Ala. 1994) ("After the foreclosure sale, the equity of redemption under the mortgage is completely extinguished."); *Howard v. Wells Fargo Bank, N.A.*, No. 2:15-cv-02238-RDP, 2016 WL 1730162, at *4 (N.D. Ala. May 2, 2016) (explaining that, before deciding what requested relief Plaintiffs were entitled to, "it is necessary to first

---

[9] Plaintiff argues that First Guaranty was liable for RoundPoint's alleged breach of contract and fraud on a theory of agency. (Docs. # 29; 65). First, there can be no liability if the "agent" did not commit the underlying breach or tort. *Cf. Owens v. Lucas*, 604 So. 2d 389, 391 (Ala. 1992). Second, "[w]hether an agent/principal relationship exists depends upon whether there is evidence of a retained right of control, whether the control is exercised or not." *McLemore v. Ford Motor Co.*, 628 So. 2d 548, 551 (Ala. 1993). Plaintiff has not provided the court with any evidence, much less substantial evidence, that First Guaranty retained or exercised a right of control over RoundPoint. Accordingly, the breach of contract and fraud claims against First Guaranty are also due to be dismissed as to First Guaranty based on Plaintiff's failure to show substantial evidence that RoundPoint was First Guaranty's agent. *See id.* ("[A]gency may not be presumed.").

determine the validity of the foreclosure sale"). Accordingly, the court first explores the alleged wrongful disclosure and the validity of the foreclosure sale.

"[W]hile there is a long-recognized cause of action in Alabama for 'wrongful foreclosure,' it is an open-ended equitable action rising from the trust relationship between a mortgagor and a mortgagee." *In re Sharpe*, 391 B.R. 117, 152 (Bankr. N.D. Ala. 2008). "The accepted definition of a wrongful foreclosure cause of action in Alabama is, 'A mortgagor has a wrongful foreclosure action whenever a mortgagee uses the power of sale given under a mortgage for a purpose other than to secure the debt owed by the mortgagor.'" *Id.* (quoting *Reeves Cedarhurst Dev. Corp. v. First Am. Fed. Sav. and Loan Ass'n*, 607 So. 2d 180, 182 (Ala. 1992)). Courts applying Alabama wrongful foreclosure law have applied the following elements to determine whether a defendant wrongfully foreclosed on a plaintiff: "(1) the actions of the mortgagee were either outside the boundaries of the foreclosure or taken for some purpose other than to secure the debt owed by the mortgagor; (2) the actions of the mortgagee were for some ulterior motive; (3) the power of sale was perverted or used for the mortgagee's or someone else's purpose; or (4) the mortgagee had an ill motive." *In re Sharpe*, 391 B.R. at 152-53; *see Phifer v. Bank of Am.*, No. 2:10-CV-741-WHA, 2012 WL 1571300, at *3 (M.D. Ala. May 4, 2012). In this case, Plaintiff does not allege that Defendants had a purpose in foreclosing on her property other than to secure the Loan on which she defaulted. And, it is undisputed that Harbin was in default throughout the entirety of the foreclosure process. (Docs. # 39 at ¶¶ I.2, I.8; 40-1 at ¶¶ 11, 29; 40-1 at p. 33, 42; 65 at ¶¶ II.a.2, II.a.8). As such, an allegation of wrongful foreclosure, as defined under Alabama law, cannot serve as the basis of a claim that Plaintiff asserts against Defendants.

If a foreclosure sale is invalid, the foreclosed property buyer's legal title to the property is called into question and the buyer may not have a right to eject. *See Berry v. Deutsche Bank Nat. Tr. Co.*, 57 So. 3d 142, 150 (Ala. Civ. App. 2010). The following circumstances may render a foreclosure sale void under Alabama law: (1) when the foreclosing entity did not have the legal right to exercise the power of sale; (2) when the debt secured by the mortgage was paid in full prior to foreclosure; (3) when the foreclosing entity failed to give adequate notice of the foreclosure sale; and (4) when the purchase price paid is so inadequate as to shock the conscience and raises a presumption of fraud, trickery, unfairness, or culpable mismanagement. *Campbell v. Bank of Am., N.A.*, 141 So. 3d 492, 495-96 (Ala. Civ. App. 2012). Here, it is undisputed that Plaintiff was in default (Docs. # 39 at ¶¶ I.2, I.8; 40-1 at ¶¶ 11, 29; 40-1 at p. 33, 42; 65 at ¶¶ II.a.2, II.a.8), RoundPoint notified Plaintiff that it was initiating the foreclosure process (Docs. # 40-1 at ¶ 13; 41-1 at p. 67), the foreclosure sale was initially scheduled for April 27, 2015 (Doc. # 41-1 at p. 67-69), and Plaintiff paid one hundred dollars ($100) in exchange for a forbearance agreement postponing the foreclosure to June 3, 2015 (Docs. # 39 at ¶¶ I.13-15; 40-1 at ¶¶ 15-17; 41-1 at p. 77, 82; 65 at ¶¶ II.a.13-15). Plaintiff does not call into question the procedure of the foreclosure; rather, she alleges that the foreclosure sale was improper because it should not have occurred on June 3, 2015. As previously discussed, no contract was formed postponing the foreclosure date past June 3, 2015. Therefore, the court finds that Plaintiff has failed to show any invalidity in the foreclosure process and that First Guaranty held title to the property once the foreclosure sale was complete. *See Fed. Home Loan Mortg. Corp. v. Pugh*, No. 2:14-cv-138-TMP, 2015 WL 4744552, at *7 (N.D. Ala. Aug. 11, 2015).

### 2.    Negligence/Wantonness Claim (Count II)

"'To establish negligence, [a] plaintiff must prove: (1) a duty to a foreseeable plaintiff; (2) a breach of that duty; (3) proximate causation; and (4) damage or injury.'" *Martin v. Arnold*, 643 So. 2d 564, 567 (Ala. 1994) (citing *Albert v. Hsu*, 602 So. 2d 895, 897 (Ala. 1992)). Further, "'[t]he absence of any one of these [elements] renders . . . the evidence insufficient [to establish negligence].'" *Franklin v. City of Athens*, 938 So. 2d 950, 953 (Ala. Civ. App. 2005) (quoting *Calvert Fire Ins. Co. v. Green*, 180 So. 2d 269, 273 (Ala. 1965)). Whether a legal duty exists is a question of law. *Rose v. Miller & Co.*, 432 So. 2d 1237, 1238 (Ala. 1983). "To establish wantonness, [a] plaintiff must prove that the defendant, with reckless indifference to the consequences, consciously and intentionally did some wrongful act or omitted some known duty." *Martin*, 643 So. 2d at 567. "To be actionable, that act or omission must proximately cause the injury of which the plaintiff complains." *Id.*

Plaintiff alleges that (1) First Guaranty knew, or should have known, that litigation which arose out of RoundPoint's alleged wrongful foreclosure was pending; (2) First Guaranty had a duty to refrain from locking Plaintiff out of her home until this litigation and the Ejection Action were complete; (3) First Guaranty breach its duties and acted illegally by prematurely ejecting Plaintiff when it locked her out of her home; and (4) Plaintiff suffered damages. (Doc. # 29 at ¶¶ 62-67). However, Plaintiff has failed to identify legal authority (and the court, through its own research, has found no clear authority) that suggests that First Guaranty owed her a duty to not secure the property following the foreclosure sale under the circumstances of this case. "Without the existence of a duty, [Plaintiff]'s negligence and wantonness claims fail as a matter of law," and summary judgment is appropriate. *Lilya v. Greater Gulf State Fair, Inc.*, 855 So. 2d 1049, 1056 (Ala. 2003).

Even if Plaintiff had provided substantial evidence that a duty existed (and, to be clear, she has not), she has nevertheless neglected to provide substantial evidence of damages to support her negligence/wantonness claim. *Celotex Corp.*, 477 U.S. at 322 (stating that summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial"). By her own admission, Plaintiff was not living at her home (because the power and water had been shut off) during the period when the lockout occurred or the Ejection Complaint was filed. (Doc. # 50-4 at p. 10-11, 21, 23). Although Plaintiff's First Amended Complaint alleges that she "suffered damages," as a result of First Guaranty's temporary lockout, she has not provided the court with Rule 56 evidence of any property damages or personal injury damages she sustained due to this temporary lockout.

Plaintiff states that "[t]he relationship between Harbin and First Guaranty arose out of the contractual relationship between them." (Doc. # 65 at p. 16). To the extent that Plaintiff is claiming a duty arises from the Note or the Mortgage, Alabama law "does not recognize a tort-like cause of action for the breach of a duty created by contract," and plaintiff's claim is not legally cognizable under Alabama law. *McClung v. MERS, Inc.*, No. 2:11-cv-03621-RDP, 2012 WL 1642209, at *7-8 (N.D. Ala. May 7, 2012) (quoting *Blake v. Bank of Am., N.A.*, 845 F. Supp. 2d 1206, 1210 (M.D. Ala. 2012)). "[A] negligent failure to perform a contract . . . is but a breach of the contract." *Id.* at *7 (quoting *Blake*, 845 F. Supp. 2d at 1210); *see also Barber v. Bus. Prods. Ctr., Inc.*, 677 So. 2d 223, 228 (Ala. 1996), *overruled in part on other grounds by White Sands Grp., L.L.C. v. PRS II, LLC*, 32 So. 3d 5 (Ala. 2009), ("[A] mere failure to perform a contractual obligation is not a tort."). "A tort claim can only be assessed when the duty of reasonable care, which one owes to another in the course of day-to-day affairs, has been

breached and causes personal injury or property damages." *McClung*, 2012 WL 1642209, at *7. And, as discussed above, Plaintiff does not provide substantial evidence that personal injury or property damages occurred in this case. Ultimately, Plaintiff has not provided the court with a showing sufficient to establish the existence of the elements essential to her negligence/wantonness claim, and this claim is due to be dismissed. *Celotex Corp.*, 477 U.S. at 322.

### 3. Conversion Claim (Count VI)

"To support a claim for conversion, a plaintiff must prove '(1) a wrongful taking, (2) an illegal assumption of ownership, (3) an illegal use or misuse of another's property, or (4) a wrongful detention or interference with another's property.'" *Kelly v. Connecticut Mut. Life Ins. Co.*, 628 So. 2d 454, 460 (Ala. 1993) (quoting *Gillis v. Benefit Trust Life Ins. Co.*, 601 So. 2d 951, 952 (Ala.1992)). "An action for conversion will not lie for the taking of real property, . . . nor will it lie for the taking of personal property that has been incorporated into real property." *Baxter v. SouthTrust Bank of Dothan*, 584 So. 2d 801, 805 (Ala. 1991). To establish conversion, "[t]he plaintiff must establish that the defendant converted specific personal property to the defendant's own use and beneficial enjoyment." *Huntsville Golf Dev., Inc. v. Ratcliff, Inc.*, 646 So. 2d 1334, 1336 (Ala. 1994). "The plaintiff asserting conversion could also show that the defendant destroyed or exercised dominion over property to which, at the time of the destruction or exercise of dominion, the plaintiff had a general or specific title and of which the plaintiff was in actual possession or to which the plaintiff was entitled to immediate possession." *Id.*

Plaintiff has withdrawn her claim for conversion of real property but alleges that the lockout by First Guaranty was a conversion of her personal property because it interfered with her ownership rights. (Docs. # 29 at ¶¶ 91-97; 65 at p. 19-21). First Guaranty contends Harbin's

conversion claim fails because (1) Harbin has admitted that none of her personal property was disturbed from the lockout and (2) First Guaranty's actions were not wrongful or illegal. (Docs. # 47 at p. 18; 67 at p. 9). The court agrees with First Guaranty. Plaintiff has not identified how First Guaranty interfered with her personal property, has not provided Rule 56 evidence that First Guaranty converted her personal property to its own use and beneficial enjoyment, and has not provided substantial evidence that First Guaranty's actions were wrongful. In short, she has not met her burden as to her conversion claim. *See Huntsville Golf Dev., Inc.*, 646 So. 2d at 1336; *see also In re Sharpe*, 391 B.R. at 158 (finding that, because the plaintiffs' complaint did not identify what property was converted, they did not meet their burden of proof as to conversion).

### 4.    Unjust Enrichment Claim (Count VII)

A claim for unjust enrichment is based on an implied contract. *Gunter v. Chase Bank USA, N.A.*, 731 F. Supp. 2d 1238, 1248 (S.D. Ala. 2010). "To prevail on a claim of unjust enrichment under Alabama law, a plaintiff must show that: (1) the defendant knowingly accepted and retained a benefit, (2) provided by another, (3) who has a reasonable expectation of compensation." *Portofino Seaport Vill., LLC v. Welch*, 4 So. 3d 1095, 1098 (Ala. 2008). The Alabama Supreme Court "has recognized that where an express contract exists between two parties, the law generally will not recognize an implied contract regarding the same subject matter." *Kennedy v. Polar-BEK & Baker Wildwood P'ship*, 682 So. 2d 443, 447 (Ala. 1996). Unlike in this case, "the law may recognize an implied contract where the existence of an express contract on the same subject matter is not proven." *Id.*

In her First Amended Complaint, Plaintiff asserts that First Guaranty was unjustly enriched through its wrongful ejection and fraud towards her. (Doc. # 29 at ¶¶ 98-102). In her Response in Opposition to Defendants' Motions for Summary Judgment, Plaintiff adds that First

Guaranty "benefited from the foreclosure" because it owns the title of the property and "[t]he retention of the benefit is unjust as it was realized through a fraudulent foreclosure." (Doc. # 65 at p. 23). First Guaranty counters that this claim is barred by the existence of the express mortgage contract between the parties, First Guaranty holds no money paid by Plaintiff, and the title was properly obtained through the foreclosure sale. (Docs. # 47 at p. 19-20; 67 at p. 9-10).

Plaintiff's claims regarding the foreclosure and subsequent temporary ejection arise from the contracts which establish her Note and Mortgage. Consequently, Plaintiff's unjust enrichment claim is barred as a matter of law. *See Kennedy*, 682 So. 2d at 447. Furthermore, even if Plaintiff could properly plead an unjust enrichment claim under Alabama law, she would not be entitled to recovery because First Guaranty has not retained a benefit. *See Portofino Seaport Vill., LLC*, 4 So. 3d at 1098. Harbin was, at maximum, unable to access her home for ten days and currently maintains possession of the home. (Docs. # 39 at ¶ I.31; 40-1 at ¶ 31; 44-1 at p. 9; 50-4 at p. 24-25; 65 at ¶ II.a.31). To the extent that Plaintiff argues that First Guaranty unjustly benefited from the foreclosure sale, the court previously found that Plaintiff's claims related to the alleged impropriety of the foreclosure sale failed, and the court has not been provided with other Rule 56 evidence that calls into question the validity of the foreclosure sale. Therefore, Plaintiff's unjust enrichment claim is due to be dismissed.

### 5.      Trespass Claim (Count VIII)

Plaintiff claims that First Guaranty is liable for trespass because this case was pending when it entered the property and locked out Harbin. (Doc. # 65 at p. 21-22). Alabama law "defines trespass as the 'entry on the land of another without express or implied authority.'" *Evans v. Walter Indus., Inc.*, 579 F. Supp. 2d 1349, 1369 (N.D. Ala. 2008) (quoting *Cent. Parking Sys. v. Steen*, 707 So. 2d 226, 228 (Ala. 1997)). To establish indirect trespass, a plaintiff

must prove "'1) an invasion affecting an interest in the exclusive possession of his property; 2) an intentional doing of the act which results in the invasion; 3) reasonable foreseeability that the act done could result in an invasion of plaintiff's possessory interest; and 4) substantial damages to the *res*.'" *Snyder v. Howard Plumbing & Heating Co.*, 792 So. 2d 425, 428 (Ala. Civ. App. 2000) (quoting *Borland v. Sanders Lead Co.*, 369 So. 2d 523, 529 (Ala. 1979)).

"If a party enters property or possesses property under a legal right, entry or possession pursuant to that right cannot constitute a trespass." *Boyce v. Cassese*, 941 So. 2d 932, 945 (Ala. 2006). Upon default, a lender has the right to possession of the mortgaged property and generally has a right to enter and to secure the property. *U.S. Bank Nat. Ass'n v. Shepherd*, 202 So. 3d 302, 313 (Ala. 2015); *see Mann v. Bank of Tallassee*, 694 So. 2d 1375, 1385 (Ala. Civ. App. 1996) (explaining that, after the bank foreclosed on plaintiffs' property, it "had the right to enter upon the real estate at will, and its title and right to possession are an absolute defense to an action for trespass."). Furthermore, "[o]nce a foreclosure sale has been completed, entry onto the property cannot be deemed a trespass." *Fed. Home Loan Mortg. Corp.*, 2015 WL 4744552, at *9-10; *see Dysart v. Trustmark Nat. Bank*, No. CV-13-BE-2092-S, 2014 WL 3543698, at *2 (N.D. Ala. July 15, 2014) ("In Alabama, however, a title dispute cannot be tried in a trespass action.").

The court has considered Plaintiff's claims related to the foreclosure of her property and found that the foreclosure was valid. After the foreclosure sale was complete, Plaintiff no longer legally owned title to the property, and, even more importantly, First Guaranty had a right to enter onto the land. *See Fed. Home Loan Mortg. Corp*, 2015 WL 4744552, at *10; *Dysart*, 2014 WL 3543698, at *2. Therefore, Plaintiff's trespass claim is due to be dismissed.

### C.     Damages

Defendants argue that Plaintiff is not entitled to the recovery of emotional distress damages or punitive damages.  (Docs. # 39 at p 20-23; 47 at p. 14-17; 67 at p. 7-9).  However, as the court has found that no claims in this action are due to proceed, no further analysis on damages is necessary.

## IV.    Conclusion

For all of these reasons, the court concludes that Defendants' Motions for Summary Judgment (Docs. # 38; 46) are due to be granted.  An Order consistent with this Memorandum Opinion will be entered.

**DONE** and **ORDERED** this March 27, 2018.

**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE