FILED

2020 Dec-04  AM 08:56
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

| | | |
|---|---|---|
| **ALLISON HARBIN,** | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **2:15-CV-01069-SLB** |
| | ) | |
| **ROUNDPOINT MORTGAGE** | ) | |
| **COMPANY,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OPINION

This matter comes before the court on cross-motions regarding the availability of witness testimony at trial in this action arising from alleged fraud that purportedly resulted in the foreclosure sale of the plaintiff's home.  Plaintiff Allison Harbin moves the court to "permit disclosures out of time and, if needed, reopen limited discovery."  (Doc. 121).[1]  More specifically, Ms. Harbin seeks to clarify her ability to call Suzanne Shinn (a bankruptcy attorney) as a witness and to belatedly disclose Ms. Shinn as a non-retained expert witness if necessary; she also seeks to belatedly disclose Diann O'Mary Harbin Barrett (Ms. Harbin's mother) and Carl Cummings (Ms. Harbin's husband) as witnesses for trial.  Defendant Roundpoint Mortgage Company opposes Ms. Harbin's motion and has filed a

---

[1] Reference to a document number, ["Doc. ___"], refers to the number assigned to each document as it is filed in the court's record.  Page number citations refer to the page numbers assigned to the document by the court's CM/ECF electronic filing system.

separate motion in limine seeking to exclude any testimony from Ms. Barrett and Mr. Cummings. (Doc. 124).

After reviewing the submissions of the parties, the court will grant in part and deny in part Ms. Harbin's motion for expert disclosure and discovery. The court will deny Ms. Harbin's request to belatedly disclose Ms. Shinn as a non-retained expert witness because her failure to timely disclose Ms. Shinn was not substantially justified or harmless and because anything beyond her permissible fact testimony crosses the line into speculation. Ms. Shinn may testify only as a fact witness to her limited actual interactions with Ms. Harbin. However, the court will grant Ms. Harbin's request for belated disclosure of Ms. Barrett and Mr. Cummings as witnesses and will reopen discovery on a limited basis as to those witnesses because any failure to disclose was substantially justified and harmless. As such, the court will deny Roundpoint's motion in limine to exclude any testimony from Ms. Barrett and Mr. Cummings.

## I.    BACKGROUND

Simply stated, this case arises from Ms. Harbin's default on her mortgage, an alleged misrepresentation by Roundpoint—the servicer of her mortgage—about the date of the resulting foreclosure sale, and the ultimate sale at foreclosure of Ms. Harbin's home. According to Ms. Harbin, after she defaulted on her mortgage she tried to get a loan modification to save her home, but faced the threat of a rapidly

impending foreclosure sale.  Ms. Harbin wished to avoid foreclosure, so she spoke to Ms. Shinn—a bankruptcy attorney and family friend—and discussed the possibility of filing for bankruptcy to prevent foreclosure.

Four days before the scheduled foreclosure sale of her home, Ms. Harbin talked to an employee at Roundpoint to determine whether the foreclosure sale was going to be postponed as she worked on obtaining documents to apply for a modification of her loan.  According to Ms. Harbin, the employee told her that the sale, which had already been rescheduled once, was "temporarily suspended."  Ms. Harbin took that to mean that the sale was postponed, but, in fact, the rescheduled sale went ahead as planned.  According to Ms. Harbin, if she had known that the sale was not postponed then she would have filed for bankruptcy to prevent the foreclosure sale.

Ms. Harbin filed the instant lawsuit against Roundpoint and against the bank who issued her mortgage, alleging multiple causes of action including fraud against Roundpoint.  (Doc. 29).  After motions for summary judgment from both defendants, this court found that all of Ms. Harbin's claims lacked merit.  (Doc. 38, doc. 46; doc. 68, doc. 69).  Ms. Harbin appealed this court's decision and the Eleventh Circuit held that Ms. Harbin's fraud claim against Roundpoint could proceed to trial because "a reasonable jury could conclude that Roundpoint made a false representation of a material existing fact on which [Ms. Harbin] reasonably

relied to her detriment by not filing for bankruptcy protection." *Harbin v. Roundpoint Mortg. Co.*, 758 F. App'x 753, 757 (11th Cir. 2018).  Roundpoint then filed a second motion for summary judgment on Ms. Harbin's fraud claim, which the court denied.  (Doc. 82, doc. 83, doc. 99).  So, Ms. Harbin's claim for fraud against Roundpoint survives to proceed to trial.

Roundpoint also filed a motion in limine, seeking, in part, to preclude the use of evidence that bankruptcy would have saved Ms. Harbin's home from foreclosure.  (Doc. 84 at 5).  Roundpoint asserted that any evidence that bankruptcy could have saved Ms. Harbin's home was unduly speculative and that Ms. Harbin had failed to disclose any experts who could testify about the results of a potential bankruptcy filing.  Ms. Harbin responded that she did not intend to argue that bankruptcy would have saved her home, but asserted that Roundpoint should not be able to argue that filing for bankruptcy would *not* have saved her home because that argument would be unduly speculative.  (Doc. 94 at 3).  This court ruled on the parties' motions in limine, finding, among other things, that it would exclude all evidence regarding whether filing for bankruptcy would have saved Ms. Harbin's house because that evidence would be unduly speculative. (Doc. 100 at 4).[2]

Then, on November 14, 2019, Ms. Harbin filed a motion to identify Ms.

---

[2] This ruling was made by Judge R. David Proctor, a colleague on this court; the case was subsequently reassigned to the undersigned.

Shinn, the bankruptcy attorney, out of time as a non-retained expert witness.  (Doc.

102).  After a conference, Judge Proctor denied the motion as moot because Ms.

Shinn would only testify as a fact witness.  (Doc. 102).[1]

After the case was reassigned to the undersigned, the court entered a

submission order requesting that the parties submit briefs on the issue of damages,

specifically the duration of Ms. Harbin's potential damages.  (Doc. 112).  The

court noted that Ms. Harbin seeks damages for the loss of her ownership interest

and equity in her home, and that, to prove those damages, she would have to show

that Roundpoint's alleged misrepresentation proximately caused that damage,

which would require a showing that she would actually have been able to keep her

home or retain her equity in the home through filing for bankruptcy or completing

a loan modification application.  (*Id.* at 2).  The court further observed that

Roundpoint would have the right to question Ms. Harbin about those issues.  (*Id.*).

In its submission order, the court noted many of the generally applicable

bankruptcy provisions in Ms. Harbin's case and ordered Roundpoint to file a brief

regarding Ms. Harbin's bankruptcy and loan modification options.  The court also

allowed Ms. Harbin to file a response.  Finally, the court noted that, should the jury

find that foreclosure was inevitable, Ms. Harbin's damages would be limited to the

time between the foreclosure sale and the date of inevitable foreclosure.  (*Id.* at 8).

Roundpoint filed its response to the submission order, arguing that, based on

Ms. Harbin's financial situation and the rules governing loan modification and bankruptcy, Ms. Harbin could not have saved her home from foreclosure with a loan modification or through bankruptcy.  (Doc. 114).  Roundpoint also argued that Ms. Harbin could not establish that Roundpoint's alleged misrepresentation proximately caused her any actual damages because she would have lost her home in foreclosure regardless of Roundpoint's alleged misrepresentation.  (*Id.*).

Ms. Harbin filed a response, arguing that the court should permit the "broad introduction of evidence in support of damages and permit the jury to reach the appropriate measure of damages."  (Doc. 116 at 2).  Ms. Harbin asserted that she would have been able to maintain a bankruptcy plan to prevent foreclosure either through the term of the bankruptcy, until she could obtain a loan modification, or—in the worst case scenario—until she could sell her house to settle her debts. (Doc. 116).

Ms. Harbin's argument in her response relied heavily on information provided by Ms. Shinn, the bankruptcy attorney to whom Ms. Harbin spoke about preventing foreclosure, and from her mother—Ms. Barrett—and her husband—Mr. Cummings.  Ms. Harbin argued that Ms. Shinn's testimony would show that she could have avoided foreclosure by filing for bankruptcy, while Ms. Barrett and Mr. Cummings would attest to their willingness and ability to have helped her financially if she had filed for bankruptcy.

Ms. Harbin filed Declarations in support of her response, including a Declaration from Ms. Shinn.  In Ms. Shinn's Declaration, she recounts her interactions with Ms. Harbin before the foreclosure sale; interactions which apparently did not include a detailed discussion of the specifics of Ms. Harbin's finances.  (Doc. 116-1).  Ms. Shinn also included extensive information about her experience with loan modifications and bankruptcies for other clients.  Much of that information dealt in generalities, likelihoods, and possible outcomes.

Roundpoint filed a reply arguing that Ms. Harbin had not submitted any actual admissible evidence indicating that she could have avoided foreclosure, and, thus, could not show damages.  (Doc. 117).  Further, Roundpoint argued that Ms. Harbin should not be allowed to use evidence that she had not previously disclosed.

In light of the parties' responses to this court's submission order, the parties filed the motions now before the court.  Ms. Harbin seeks to clarify the scope of Ms. Shinn's permissible testimony and, if necessary, belatedly disclose Ms. Shinn as a non-retained expert witness; she also seeks to belatedly disclose, with additional time for discovery, Ms. Barrett and Mr. Cummings as witnesses.  (Doc. 121).  Roundpoint opposes the motion and seeks, through its motion in limine, to exclude Ms. Barrett and Mr. Cummings as witnesses.  (Doc. 123; doc. 124).

## II.    STANDARD OF REVIEW

Although the matters before the court tangentially implicate wide ranging issues in this case such as causation and damages, the only issues actually before the court at this time relate to the testimony and disclosure of witnesses.  Pursuant to Rule 26 of the Federal Rules of Civil Procedure, near the beginning of litigation a party must provide to the other parties the name and contact information—if known—of anyone likely to have discoverable information about the case and the subject of such information.  Fed. R. Civ. P. 26(a)(1)(A)(i).  In addition to those disclosures, the party must also disclose the identity of any expert witness it plans to use at trial.  Fed. R. Civ. P. 26(a)(2)(A).  Disclosures for expert witnesses retained or employed to provide expert testimony must include a written report that meets certain criteria; disclosures of non-retained experts only need to state the subject matter on which the expert is expected to provide expert testimony and "a summary of the facts and opinions to which the witness is expected to testify." Fed. R. Civ. P.  26(a)(2)(B), (C).  A party must make Rule 26 expert disclosures at the time that the court orders or, in lieu of any court orders, at least 90 days before the case is set for trial, but parties must supplement expert disclosures in a timely manner if they learn that their disclosures are incomplete or incorrect.  Fed. R. Civ. P. 26(a)(2)(D); Fed. R. Civ. P. 26(e).

Rule 37 of the Federal Rules of Civil Procedure provides consequences for

parties who fail to make required disclosures under Rule 26.  Pursuant to Rule 37, if a party "fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness" at trial "unless the failure was substantially justified or is harmless."  Fed. R. Civ. P. 37(c)(1).  "The burden of establishing that a failure to disclose was substantially justified or harmless rests on the nondisclosing party."  *Mitchell v. Ford Motor Co.*, 318 F. App'x 821, 824 (11th Cir. 2009) (citing *Leathers v. Pfizer, Inc.*, 233 F.R.D. 687, 697 (N.D. Ga. 2006)).  When considering imposing sanctions, Rule 37 gives trial courts "discretion to decide how best to respond to a litigant's failure to make a required disclosure under Rule 26."  *Taylor v. Mentor Worldwide LLC*, 940 F.3d 582, 593 (11th Cir. 2019).

## III.    DISCUSSION

In her motion to permit expert disclosure out of time, Ms. Harbin seeks to clarify the permissible scope of Ms. Shinn's testimony and belatedly disclose her as a non-retained expert witness, if necessary.  (Doc. 121).  She also seeks to disclose Ms. Barrett and Mr. Cummings as witnesses.  Because Ms. Harbin seeks slightly different relief regarding the different witnesses, and because Roundpoint's motion in limine specifically addresses Ms. Barrett and Mr. Cummings, the court will first address Ms. Shinn's potential testimony and disclosure and will then address the disclosure of Ms. Barrett and Mr. Cummings

as witnesses.

    A. _Suzanne Shinn_

    In her motion to permit expert disclosure out of time, Ms. Harbin argues that the court should permit Ms. Shinn to testify as a fact witness to her professional opinions about Ms. Harbin's potential bankruptcy proceedings, including their potential outcome, based on Ms. Shinn's knowledge as a bankruptcy attorney. (Doc. 121).  Alternatively, Ms. Harbin argues that the court should permit her to identify Ms. Shinn out of time as a non-retained expert witness.  Ms. Harbin argues that Ms. Shinn is a fact witness, or at least a non-retained expert, because she was involved in the facts of the case prior to any litigation and has not been retained as an expert by Ms. Harbin.  She analogizes Ms. Shinn's role to that of a treating physician and asserts that courts in this circuit allow treating physicians to testify as non-retained experts about a patient's treatment based on their expertise.  Ms. Harbin asserts that, if Ms. Shinn qualifies as a non-retained expert, she should be allowed to disclose Ms. Shinn out of time because her failure to provide disclosure is substantially justified and harmless.  (_Id._).  Further, she asserts that, without Ms. Shinn, she will be prejudiced by Roundpoint's "proposed 'expert' testimony regarding bankruptcy procedures" that it used in its response to the submission order to argue that Ms. Harbin could not have avoided foreclosure and, thus, did not suffer any damages from Roundpoint's alleged actions.  (Doc. 121 at 20).

In response, Roundpoint argues that Ms. Shinn's proposed testimony violates Federal Rule of Evidence 403 because it is "irrelevant, wasteful, and cumulative." (Doc. 123 at 1). Roundpoint also asserts that Ms. Shinn cannot testify regarding potential outcomes if Ms. Harbin had filed for bankruptcy because that goes beyond her firsthand knowledge of Ms. Harbin's situation, as obtained prior to litigation, because such testimony would not be based on her actual, limited perceptions in this case. (Doc. 123). Rather, according to Roundpoint, Ms. Shinn's opinions come from her general experiences with other clients and with bankruptcy in general, which render her proposed testimony unduly speculative expert testimony under Federal Rule of Civil Procedure 26(a)(2)(B). Roundpoint also asserts that Ms. Harbin has not shown that Ms. Shinn possesses the necessary qualifications to give expert testimony and her testimony, which involves legal conclusions, would be misleading for the jury. Finally, Roundpoint argues that the failure to disclose Ms. Shinn was neither substantially justified nor harmless. Roundpoint adds that it does not rely on any expert testimony that would create prejudice to Ms. Harbin if the court were to exclude Ms. Shinn's testimony. (*Id.*).

In reply, Ms. Harbin asserts that Roundpoint prematurely raises issues about the ultimate admissibility of Ms. Shinn's specific testimony. (Doc. 128). She also argues that Ms. Shinn clearly qualifies as a percipient witness because she advised

Ms. Harbin prior to foreclosure and long before the instant lawsuit.  She states that Ms. Shinn's firsthand experience advising Ms. Harbin relied on Ms. Shinn's general bankruptcy knowledge and produced the firsthand facts to which Ms. Harbin wants Ms. Shinn to testify.  As for potential prejudice to Roundpoint should the court allow late disclosure of Ms. Shinn, Ms. Harbin argues that any prejudice could easily be remedied if Roundpoint deposed Ms. Shinn.  (*Id.*).

Ms. Harbin's argument boils down to her assertion that, whether the court classifies Ms. Shinn as a fact witness or a non-retained expert, Ms. Shinn should be able to testify about her "professional opinion and advice about the probable time tables and outcomes of Harbin's bankruptcy filing."  (Doc. 121 at 1).  Throughout her motion, Ms. Harbin argues that Ms. Shinn is analogous to a treating physician and should be treated similarly in terms of the scope of her permissible testimony. However, the court finds that, based on Ms. Shinn's limited involvement in this case in which she merely provided preliminary information about *possibly* filing for bankruptcy, Ms. Shinn's role is not analogous to a treating physician.

Treating physicians present "special evidentiary problems that require great care and circumspection by the trial court" because their testimony can go beyond the sphere of the physician's specific treatment of a patient and into explanations "not grounded in their own observations."  *Williams v. Mast Biosurgery USA, Inc.*, 644 F.3d 1312, 1317 (11th Cir. 2011).  Because of those issues, courts allow

physicians to provide lay testimony based on expert opinions where the testimony is clearly tied to the specific treatment of a patient.  *Id.*  The admission of that kind of expanded lay testimony rests on the fact that the physician treats the patient, a process involving a detailed examination of the facts of the patient's condition and history.  Here, no such detailed examination exists.  Based on the Declarations of Ms. Shinn and Ms. Harbin, Ms. Shinn's conversations about whether Ms. Harbin could file for bankruptcy to prevent foreclosure were preliminary; they dealt with a proposed course of action, not the factual specificity required in actually pursuing a bankruptcy filing.  Accordingly, Ms. Shinn is not analogous to a treating physician in this case and will not be permitted the latitude as a fact witness that a treating physician would enjoy.  As such, Ms. Shinn will be permitted to testify as a lay witness within the normal contours of fact witness testimony.

Pursuant to Federal Rule of Evidence 701, a fact witness can only testify about things that are "rationally based on the witness's perception," helpful to the jury, and "not based on scientific, technical, or other specialized knowledge within the scope of Rule 702."  Fed. R. Evid. 701.  As such, witnesses testifying under Rule 701 must testify based on firsthand knowledge or actual observation.  *See Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 592 (1993) (stating that fact witnesses testify based on their observations).  On the other hand, "[w]itnesses offering opinions based on specialized knowledge are experts and must be subject

to the requirements of Rule 702." *Woodard v. Town of Oakman, Ala.*, 970 F. Supp. 2d 1259, 1267 (N.D. Ala. 2013).

In identifying factual testimony under Rule 701 as opposed to expert testimony under Rule 702, the Eleventh Circuit has stated that district courts must be "vigilant in ensuring that the reliability requirements set forth in Rule 702 not be evaded through the simple expedient of proffering an expert in lay witness clothing." *Williams,* 644 F.3d at 1317 (internal quotations and citations omitted). Lay witnesses may only "testify about their own immediate perceptions, testimony that blurs into supposition and extrapolation crosses the line into expertise." *Lebron v. Sec'y of Fla. Dep't of Children & Families*, 772 F.3d 1352, 1372 (11th Cir. 2014).

In this case, Ms. Harbin seeks to have Ms. Shinn provide testimony about her "professional opinion and advice about the probable time tables and outcomes of Harbin's bankruptcy filing." (Doc. 121 at 1). Ms. Shinn's Declaration, which Ms. Harbin included with her response to this court's submission order, shows that she intends to provide that testimony based not only on her specific interactions with Ms. Harbin, but also based on her general knowledge about bankruptcy proceedings and her work with other clients. (Doc. 116-1). Of that proposed testimony, only Ms. Shinn's account of the actual conversations between her and Ms. Harbin falls under the purview of Rule 701 fact testimony. Any other

14

testimony about her experience in bankruptcy, the underlying basis for what she told Ms. Harbin, or her predictions about what would likely have occurred if Ms. Harbin had filed for bankruptcy is either based on specialized expert knowledge or requires supposition and extrapolation; therefore, those opinions qualify as expert testimony subject to the strictures of Rule 702. *See Woodard, Ala.*, 970 F. Supp. 2d at 1267; *Lebron*, 772 F.3d at 1372. Ms. Harbin cannot introduce expert testimony from Ms. Shinn in the guise of lay testimony to avoid adhering to the reliability requirements set forth in Rule 702. *See Williams,* 644 F.3d at 1317.

Accordingly, the court will only allow Ms. Shinn to testify as a fact witness to the actual substance of her conversations with Ms. Harbin. She can testify to the fact that she is a bankruptcy attorney, that Ms. Harbin consulted her to ask about the possibility of filing for bankruptcy to prevent foreclosure, that she explained to Ms. Harbin that she could file for bankruptcy to prevent foreclosure if she could not get written confirmation that the foreclosure sale was postponed while she tried to obtain a loan modification, and that Ms. Harbin told her that the sale had been postponed. Any testimony beyond the actual content of their conversations will not be allowed as fact testimony.

In an effort to allow Ms. Shinn to provide broader testimony, Ms. Harbin seeks alternative relief in the form of belated disclosure of Ms. Shinn as a non-retained expert witness. (Doc. 121). She admits that she did not disclose Ms.

Shinn as a non-retained expert as required under Rule 26(a)(2)(C), but argues that the failure to timely disclose Ms. Shinn was substantially justified and harmless because Ms. Shinn was a "known quantity to the Parties and their counsel," any prejudice can be remedied by further discovery, and the exclusion of Ms. Shinn would make the trial unfair for Ms. Harbin.  (Doc. 121 at 12).  After reviewing the submissions from the parties, the court will not permit the late disclosure of Ms. Shinn as an expert witness.

Courts can excuse a failure to timely disclose an expert witness where the failure was substantially justified or harmless.  Fed. R. Civ. P. 37(c)(1).  The burden to show that the failure was substantially justified or harmless rests on the disclosing party, and the trial court has the discretion to decide how to respond to the failure to make a timely disclosure.  *See Mitchell*, 318 F. App'x at 824; *Taylor*, 940 F.3d at 593.  When exercising its discretion to determine whether a failure to disclose was harmless or justified, the court considers four factors: "(1) the unfair prejudice or surprise of the opposing party; (2) the opposing party's ability to cure the surprise; (3) the likelihood and extent of disruption to the trial; and (4) the offering party's explanation for its failure to timely disclose the evidence."  *Nat'l Fire & Marine Ins. Co. v. Wells*, 301 F. Supp. 3d 1082, 1092 (N.D. Ala. 2018) (quoting *King v. Passmore*, 2:16–cv–00192–JEO, 2017 WL 5202886, *2 (Apr. 17, 2017)).

Here, whether to allow late disclosure presents a very close question. However, after careful consideration, the court finds that Ms. Harbin's failure to disclose Ms. Shinn as an expert witness was not harmless or justified and, thus, Ms. Shinn cannot provide expert testimony at trial.  *See* Fed. R. Civ. P. 37(c)(1).

First, the court finds that Roundpoint would suffer surprise and prejudice from the belated disclosure of Ms. Shinn as an expert because, throughout most of this case, Roundpoint has not been provided with the full extent of Ms. Shinn's proposed topics of testimony.  *See Nat'l Fire & Marine Ins. Co.*, 301 F. Supp. 3d at 1092.  Beginning early in the case, Ms. Harbin was not transparent about the information that Ms. Shinn could provide.  While Ms. Harbin asserts that Ms. Shinn has been a known quantity throughout the case, during a deposition of Ms. Harbin in June of 2016 Ms. Harbin refused to produce or discuss emails between Ms. Harbin and Ms. Shinn because of attorney/client privilege.  (Doc. 42-1 at 53–57).  Roundpoint accordingly limited their questions about Ms. Harbin's interactions with Ms. Shinn.  (*Id.*).  Ms. Harbin's counsel did note that Roundpoint could depose Ms. Shinn, but, even then, Ms. Harbin's counsel mentioned that there would be a line of impermissible questioning because of attorney-client privilege and did not indicate that Ms. Shinn would be providing expert testimony or testimony about what would have happened if Ms. Harbin had filed for bankruptcy.  (*Id.* at 57).  It is clear that Ms. Harbin shielded information about Ms.

Shinn from Roundpoint that prevented Roundpoint from accurately assessing Ms. Shinn's full potential role.

Further, Roundpoint thought for most of this case that Ms. Shinn would only testify as a fact witness.  Roundpoint certainly was not provided, at least until recently, with any indication that Ms. Shinn would testify as broadly as her Declaration indicates.  In short, Roundpoint was prejudiced because, until recently, it knew about the existence of Ms. Shinn but had little idea of "the facts and opinions to which the witness is expected to testify," as required by the disclosure rules.  *See* Fed. R. Civ. P. 26(a)(2) (C).  Thus, Roundpoint lacked "sufficient knowledge" about Ms. Shinn's proposed testimony.  *St. Paul Fire & Marine Ins. Co.*, No. 2:11-cv-02695-JEO, 2013 U.S. Dist. LEXIS 201619, at *10.

The court notes that the surprise in this case could, as Ms. Harbin argued, be cured by deposing Ms. Shinn.  *See id.*  However, the mere fact that there is still time for the opposing party to depose a late-disclosed witness "does not render the untimely disclosure harmless."  *Id.* at *11.  Here, the potential to cure the surprise through deposition is outweighed by the other factors that do not support late disclosure in this case.

Reviewing those other factors, the court finds that Ms. Harbin cannot adequately explain her failure to timely disclose Ms. Shinn as an expert witness. *See Nat'l Fire & Marine Ins. Co.*, 301 F. Supp. 3d at 1092.  Ms. Harbin asserts that

she did not know that she would need extensive testimony from Ms. Shinn until late in this case.  While Ms. Harbin might not have understood the full extent of the testimony she would need from Ms. Shinn at the very beginning of this case, the decision to file for bankruptcy and the result of that potential decision have been issues in this case since its inception.[3]  But, instead of freely disclosing the breadth of Ms. Shinn's knowledge and role early on, Ms. Harbin kept some of Ms. Shinn's potential testimony behind the veil of privilege and initially moved to disclose Ms. Shinn as an expert after the close of discovery. The court does not find Ms. Shinn's reasons for her delayed disclosure compelling.

The court also finds that, because of the peculiar nature of the proposed evidence, the evidence's potential to disrupt the trial weighs against delayed disclosure.  *See Nat'l Fire & Marine Ins. Co.*, 301 F. Supp. 3d at 1092.  Ms. Harbin argues that the late disclosure of Ms. Shinn as a non-retained expert will not disrupt trial because a trial date has not yet been set.  She cites to cases finding that there was no prejudice in belated disclosures where the opposing party had plenty of time to remediate any prejudice.  However, those cases depend heavily on the particular circumstances at issue and the exercise of the discretion of the court.

---

[3]After the case had been pending for 51 months, Judge Proctor accepted the agreement of the parties that neither side would argue that filing for bankruptcy would have saved Ms. Harbin's house.  (Doc. 100).  The undersigned is of the opinion that whether Ms. Harbin could have ultimately saved her house by filing for bankruptcy is relevant to her damages if she prevails in showing liability.

For instance, Ms. Harbin cites a case that found no prejudice where information was belatedly disclosed 10 months before trial, but in that case the opposing party had been timely provided with extremely similar evidence that helped remediate the prejudice. *United States ex rel. S. Site & Underground, Inc. v. McCarthy Improvement Co.*, No. 3:14-cv-919-J-PDB, 2017 U.S. Dist. LEXIS 13762 (M.D. Fla. Feb. 1, 2017).  In another case cited by Ms. Harbin, a court found that late disclosure of an expert report was harmless, but in that case the expert had already been deposed and the defendant did not take action to redepose him. *BFI Waste Sys. of N. Am. v. Dekalb Cty., Georgia*, 303 F. Supp. 2d 1335, 1345 (N.D. Ga. 2004).  Essentially, these sorts of decisions rely on the specific facts of the case and the discretion of the court, and the cases cited by Ms. Harbin are distinguishable from the case at hand.  *See Taylor*, 940 F.3d at 593 (noting the court's discretion in matters under Rule 26).  Here, even though no trial date is set, allowing late disclosure would disrupt the trial in another way.

Ms. Shinn's proposed testimony largely concerns her knowledge of bankruptcy and her predictions about what *probably* would have happened *if* Ms. Harbin had filed for bankruptcy.  Allowing the belated disclosure of Ms. Shinn as a non-retained expert to provide such testimony would create numerous evidentiary issues because of the inherently speculative nature of the proposed evidence.  Further, it would cause the parties to have to engage in potentially costly

20

discovery—and expensive motion practice—for evidence that would, by and large, not be admissible at trial because of its speculative nature.  Thus, the court finds that, despite the fact that no trial date is currently set, the belated disclosure of Ms. Shinn as an expert witness would disrupt the course of trial.

As a final related note, the court is not persuaded by Ms. Harbin's assertion that exclusion of Ms. Shinn's testimony would result in an unfair trial.  Even if Ms. Harbin had disclosed Ms. Shinn as an expert at the beginning of this case, the hypothetical information about the specifics of what *might* have happened if Ms. Harbin had filed for bankruptcy—including testimony about what courts *likely* would have done or the actions Ms. Harbin *might* have been able to take—would almost certainly have been excluded at trial as either irrelevant or unduly prejudicial due to the potential to mislead the jury and confuse the issues.  *See* (Doc. 116-1); Fed. R. Evid. 403 (allowing courts to exclude relevant evidence where its probative value is outweighed by a danger of "unfair prejudice, confusing the issues, misleading the jury," and other concerns).

In determining whether to admit proffered expert testimony, trial courts must find that the testimony is grounded in fact and is not speculative.  *United States v. Frazier*, 387 F.3d 1244, 1262 (11th Cir. 2004).  This is especially important because speculative testimony can gain persuasiveness merely because of the "mantle of reliability" that accompanies testimony from an expert witness.  *Hughes*

*v. Kia Motors Corp.,* 766 F.3d 1317, 1328 (11th Cir. 2014) (quoting *Rink v.*

*Cheminova, Inc.*, 400 F.3d 1286, 1291 (11th Cir. 2005)).  Here, Ms. Shinn's

proposed testimony about what would have happened if Ms. Harbin had filed for

bankruptcy is mere speculation based on her general extrapolations of what

typically happens in bankruptcy proceedings.  Ms. Harbin seeks to use Ms. Shinn

to introduce evidence so speculative that the court would not allow it from any

expert witness.  For example, Ms. Shinn's Declaration includes the following

statements that have only the most tenuous connection to actual, demonstrable

facts in this case:

> 36. When filing a Chapter 13 plan, a debtor may pay the filing fee to
> the clerk of the court when the case is filed, but also has an option to
> file an application to pay the filing fee in installments.  The payment
> of the filing fee is not a significant obstacle to filing a chapter 13 case
> *and would not have been so for Ms. Harbin*.

> 37. The filing fee can be included in the plan payments and paid in
> installments with court approval (*which is very common*).  Therefore,
> even if Ms. Harbin could not have paid the filing fee in full, *she still
> would have been permitted to file chapter 13 bankruptcy prior to the
> foreclosure sale. Most likely the application to pay the filing fees in
> installments would have been approved.*

> 39. Even if Ms. Harbin needed to file an "emergency" petition, she
> would have been able to do so to prevent the June 3, 2015, foreclosure
> sale.  *Over the years, I have successfully filed "emergency" petitions
> to prevent foreclosure sales, repossession of property, sheriff's writ of
> execution, etc.  Ms. Harbin's situation was common* and if
> Roundpoint had not represented that the foreclosure sale has been
> postponed, we would have timely filed the petition, or, failing that, an
> "emergency" petition.

42. Additionally, and perhaps more importantly, *the courts in the Northern District of Alabama would also confirm a plan even if the debtor's leftover income or disposable income is relatively low wherein the debtor might be choosing "to eat beans and rice for the next five years" to protect her home.*[4]

43. Over the last thirty years, *I have routinely seen* clients work two or three jobs, elicited a family member to move in and help with expenses, received help from family, cut back on utilities such as cable, internet, phone, power, and other expenses such as food, transportation, life insurance, etc., so that plan payments can be made. In my judgment and experience, Ms. Harbin was this type of client.

52. In my experience, the Northern District is a pro-debtor court (as are most bankruptcy courts) with an ideology that generally is very lenient to the debtor in confirming plans, ruling in favor of debtors on motions to lift stay, even patiently allowing debtors multiple opportunities to perform so that debtors are afforded as many opportunities as is reasonably possible to successfully complete a plan and reorganize.[5]

56. If Ms. Harbin had been given the opportunity to file a chapter 13 before the June 3, 2015, foreclosure date, her first plan payment and mortgage payment would have been due on or before July 3, 2015. *Effectively, Ms. Harbin would have been able to save during the June 2015 pay cycles and be ready to pay the next mortgage payment due in July 2015.*

64. Should the debtor fall behind in making post-petition mortgage payments after confirmation, the mortgage company may file a motion for relief from stay.  In this division, *the debtor is generally given at least "one bite at the apple."*  […]

(Doc. 116-1) (emphasis added).  These statements deal in what could or might

have happened and form prognostications with little evident factual support,

---

[4] This is an extreme example of the speculative nature of the proposed "expert" testimony of Ms. Shinn.

[5] See footnote 4.

including multiple predictions about what courts would do. Court proceedings vary from case to case and judge to judge and are generally not so easy to predict. Ms. Shinn's speculative proposed testimony lacks a grounding in fact and could easily confuse or mislead the jury, all of which weighs against its potential admission. *See* Fed. R. Evid. 403.

As for Ms. Harbin's assertion that she needs testimony from Ms. Shinn to combat Roundpoint's improper expert testimony, the court notes that it will not allow improper expert testimony at trial from either side.

Accordingly, the court finds that Ms. Harbin has not met her burden of showing that the court should excuse her failure to timely disclose Ms. Shinn as an expert witness. *See Mitchell*, 318 F. App'x at 824; Fed. R. Civ. P. 37(c)(1). The court finds that the correct response to Ms. Harbin's failure to timely disclose Ms. Shinn as an expert witness is to exclude any expert testimony from Ms. Shinn. Therefore, the court will allow Ms. Shinn to testify solely as a fact witness and will deny Ms. Harbin's motion for belated disclosure as to Ms. Shinn. The court will allow Ms. Shinn to present evidence of her actual conversations with Ms. Harbin, not speculative or expert evidence.

### B. *Ms. Barrett and Mr. Cummings*

In addition to requesting clarification regarding the scope of Ms. Shinn's permissible testimony and seeking to belatedly disclose Ms. Shinn as an expert,

Ms. Harbin's motion requests that this court allow her to disclose two additional witnesses—her mother, Ms. Barrett, and her husband, Mr. Cummings—and reopen limited discovery to allow time to depose those witnesses. (Doc. 121). Ms. Harbin asserts that both Ms. Barrett and Mr. Cummings will testify that they were willing and able to provide her financial support if she had filed for bankruptcy, which will help establish that she could have prevented foreclosure by filing for bankruptcy. She states that she did not know that the witnesses would be relevant or necessary until this court ordered briefing on the issue of the extent of her damages. Further, she argues that Roundpoint can cure any prejudice by deposing the proposed witnesses. Thus, Ms. Harbin asserts that her previous failure to disclose the witnesses is substantially justified and harmless.

Rather than file a response to Ms. Harbin's argument, Roundpoint filed a motion in limine to exclude the testimony of Ms. Barrett and Mr. Cummings. (Doc. 124). Roundpoint argues that Ms. Harbin has not actually given the details of the proposed witnesses' financial situations, and further argues that neither Ms. Barrett nor Mr. Cummings was aware of Ms. Harbin's financial situation at the time of the foreclosure sale, so their ability to offer financial assistance is irrelevant. Roundpoint asserts that Ms. Harbin's failure to disclose the witnesses springs from the fact that they did not have any relevant information. Roundpoint also states that bringing the witnesses into the case at this late date will create

undue prejudice.  Finally, Roundpoint argues that evidence from Ms. Barrett and Mr. Cummings is precluded under this court's prior motion in limine ruling that Ms. Harbin cannot present evidence that bankruptcy would have saved her house.[6]

Ms. Harbin responds that the failure to disclose the witnesses was justified because she did not know until Roundpoint filed its recent briefs on the issue of damages that she would need to show that she could stay in bankruptcy for long enough to stave off foreclosure.  (Doc. 129).  She also argues that any prejudice from failing to disclose Ms. Barrett and Mr. Cummings as witnesses can easily be remedied by giving Roundpoint the opportunity to depose the witnesses.

Ms. Harbin admits that she failed to disclose the identities of Ms. Barrett and Mr. Cummings in a timely manner as required under Rule 26(a).  *See* Fed. R. Civ. P. 26(a)(1)(A)(i).  Where a party fails to make a required disclosure of a witness pursuant to Rule 26(a), the party cannot use the witness unless "the failure was substantially justified or harmless."  Fed. R. Civ. P. 37(c)(1).  "Rule 37 gives a trial court discretion to decide how best to respond to a litigant's failure to make a required disclosure under Rule 26."  *Taylor*, 940 F.3d at 593 (11th Cir. 2019).

In this case, Ms. Harbin has met her burden of showing that the failure to disclose Ms. Barrett and Mr. Cummings was substantially justified and harmless.  *See Mitchell*, 318 F. App'x at 824; Fed. R. Civ. P. 37(c)(1).  The issue of the extent

---

[6] As mentioned above, this ruling was made by Judge Proctor before the case was reassigned to the undersigned.

of Ms. Harbin's damages, which ties into the factual issue of whether she would actually have been able to stave off foreclosure, arose recently in this case after the court issued its submission order pertaining to damages.  (Doc. 112).  In fact, the issue arose *after* this court's previous ruling on Roundpoint's motion in limine to prevent testimony that Ms. Harbin could have saved her house through bankruptcy; and the court's ruling on that motion was based in part on Ms. Harbin's assertion at the time that she did not plan on introducing such evidence.[7]  Now, the court has specifically injected the issue of the extent of Ms. Harbin's damages, which necessarily entails facts regarding her ability to use a bankruptcy filing to prevent foreclosure.  In light of this court's submission order, the court's previous ruling barring testimony about whether bankruptcy could have saved Ms. Harbin's home no longer stands.  Thus, the undersigned will allow argument by both sides to the jury on whether bankruptcy would have prevented Ms. Harbin from losing her home.

Based in large part on the court's own actions raising the issue of the factual extent of Ms. Harbin's recoverable damages, Ms. Harbin seeks to introduce evidence from Ms. Barrett and Mr. Cummings that goes to the precise issue of whether she had the factual ability to prevent foreclosure.  This stands in

---

[7] Judge Proctor ruled on the motion in limine based on the arguments before him at the time and before the issue of the extent of Ms. Harbin's potential damages arose.

opposition to the testimony of Ms. Shinn, as the issue of whether Ms. Harbin would have or could have filed for bankruptcy was present from the beginning of this case, while the issue of the factual extent of damages only coalesced relatively recently.  Therefore, the court finds that the previous failure to disclose Ms. Barrett and Mr. Cummings as witnesses was substantially justified.  *See* Fed. R. Civ. P. 37(c)(1).

The court also finds the failure to disclose Ms. Barrett and Mr. Cummings harmless because Ms. Harbin proposes to provide testimony from the witnesses on the very narrow issue of their ability and willingness to help her financially and because the court will reopen discovery on a limited basis to allow Roundpoint to depose the witnesses.  The opportunity for Roundpoint to depose the witnesses about the specifics of their financial situations eliminates any potential prejudice to Roundpoint.  Further, to the extent that Roundpoint argues that the testimony is not relevant because neither witness knew of Ms. Harbin's financial situation, the court finds that the proposed testimony could be relevant to the issue of whether Ms. Harbin could have avoided foreclosure by completing her bankruptcy plan and to the issue of her damages.  The relevance of any information from the witnesses can be developed through discovery.  Further, the court will ensure that Roundpoint can get the full benefit of that discovery by requiring the witnesses to produce relevant financial records before any deposition may take place.  In other words,

the court will remediate any prejudice to Roundpoint by conditioning the reopening of discovery on Roundpoint's access to relevant financial records from Ms. Barrett and Mr. Cummings. While the court would prefer such disclosures to be made willingly, the court notes that Roundpoint can subpoena the witnesses pursuant to Federal Rule of Civil Procedure 45 if necessary.

Accordingly, the court will allow the late disclosure of Ms. Barrett and Mr. Cummings as witnesses and will reopen discovery on a limited basis solely for the depositions of Ms. Barrett and Mr. Cummings. Depositions may only occur after the production of financial records from the witness. This limited discovery must conclude before June 1, 2021.

In light of the above, the court also denies without prejudice Roundpoint's motion in limine to exclude Ms. Barrett and Mr. Cumming's testimony.

## IV.    CONCLUSION

After considering the submissions from the parties, the court will **GRANT IN PART** and **DENY IN PART** Ms. Harbin's motion for out of time disclosure and to reopen discovery. The court will **DENY** Ms. Harbin's motion to belatedly disclose Ms. Shinn as a non-retained expert witness, but will allow Ms. Shinn to testify as a fact witness to any evidence that she gained firsthand during her interactions with Ms. Harbin. The court will **GRANT** Ms. Harbin's motion to allow the late disclosure of Ms. Barrett and Mr. Cummings as witnesses and will

reopen discovery on a limited basis to allow Roundpoint to depose them.

Depositions may only take place after the witnesses have produced financial

information and discovery must conclude before June 1, 2021.  Because of the

grant of Ms. Harbin's motion for the late disclosure of Ms. Barrett and Mr.

Cummings, the court will **DENY** Roundpoint's reciprocal motion in limine to

exclude the testimony of Ms. Barrett and Mr. Cummings.

      **DONE** and **ORDERED** this 4th day of December, 2020.

SHARON LOVELACE BLACKBURN
UNITED STATES DISTRICT JUDGE