# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
### (SOUTHERN DIVISION)

| | | |
|---|---|---|
| **ALLISON HARBIN,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **2:15-CV-1069-SLB** |
| | ) | |
| **ROUNDPOINT   MORTGAGE** | ) | |
| **SERV. CORP., et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

---

## PLAINTIFF'S MOTION FOR NEW TRIAL

---

**COMES NOW** the Plaintiff, **Allison Harbin,** by and through her attorneys, and files her Motion for New Trial under Federal Rule of Civil Procedure 59 and further states as follows:

## INTRODUCTION

This is a fraud case that was tried to verdict. On February 4, 2022, the Court entered the minutes and indicated a jury verdict was reached on February 2, 2022. The judgment was filed on February 2, 2022, and entered on February 6, 2022. [Doc. 201].

## FACTS

1.   The case was set for jury trial the week of January 24, 2022.

2.   After trial, the jury returned a Plaintiff's verdict on February 2, 2022. [Doc. 201].

3.   The judgment was entered on February 6, 2022. [*Id.*].

4.   Prior to trial, the Defendant attempted to limit (in limine) the punitive damages and the related evidence. [Doc. 84 at *4].

5.   The Court ruled that the Plaintiff could present evidence necessary to prove punitive damages in the context of a fraud claim. [Doc. 100 at 1-3].

6.   However, the Court then severely limited the evidence of intent and the behavior of the Defendant that would support an intentional fraud claim.

7.   While the Court submitted the claim to the jury, the evidentiary rulings hamstrung the claim and prevented the jury from a full and fair consideration of the claim.

8.   During voir dire, juror 18 (Fabray Deshawn Turner) was struck for cause.

9.     The basis of the strike was that because Ms. Turner's mother had a similar experience to Ms. Harbin that she could not be fair.

10.    Ms. Turner gave no indication that her mother's experience would impact her judgment.

11.    Indeed, Ms. Turner answered questions without hesitation and swore that she could be fair.

12.    The Plaintiff objected to her being stricken for cause, noting that (1) the Defendant could strike her with a peremptory challenge and (2) that a juror having a similar experience, without more, is not sufficient to allow a strike for cause, but the court overruled that objection.

13.    During the first day of trial, the Court required Plaintiff's counsel to go to sidebar every time counsel intended to impeach the RoundPoint corporate representative with the prior representative's deposition because it was not the witness's testimony.

14.    The Plaintiff objected to this highly prejudicial requirement and submitted that the change between representatives is irrelevant

since the testimony is RoundPoint's rather than a particular witness.

15. Still, the Court required a sidebar. And the jury was noticeably perplexed by the repeated sidebars and disruptions.

16. After the requirement was revisited on the second day of trial, the Court lifted that restriction, but the harm was complete.

17. The evidence at trial was that the home sold at foreclosure for one-hundred and twenty-four thousand, five hundred and sixty dollars and 16/100 cents. [Plaintiff's Exhibit 30].

18. The evidence at trial was that the home was appraised for $147,000 on March 17, 2015. [Plaintiff's Exhibit 15].

19. The March 2015 appraisal was performed for the Defendant at its request and was the lowest valuation of the property presented to the jury. [Plaintiff's Exhibit 15].

20. Defendant did not object to the introduction into evidence of Plaintiff's Exhibit 15 and did not present any evidence of a lower appraisal amount for the relevant time period.

21.   Therefore, the evidence established a minimum financial loss to Plaintiff of twenty-two thousand four hundred and thirty-nine dollars and 84/100 ($22,439.84).

22.   Yet, the jury returned a verdict of only twelve thousand five hundred dollars ($12,500). [Doc. 201].

23.   The verdict form also contained errors. [*Id*.].

24.   The Defendant is RoundPoint.

25.   Gerstenfeld was not a party and was not deposed.

26.   Yet, the verdict form continually asked the jury to answer questions based on Gerstenfeld's state of mind rather than RoundPoint's state of mind. [*Id*.].

27.   The Jury Instructions from the court also focused the jury largely on Daniel Gerstenfeld and additionally almost exclusively on the phone call of May 29, 2015 and the follow up email.

28.   The court instructed the jury that evidence regarding Roundpoint and its employees' conduct on days other than May 29th were only for the jury to have a full picture of the events surrounding May 29th and were not to be considered in their deliberations as to whether Harbin proved her fraud claims.

29. The specific charges for each fraud claim - Intentional, Reckless and Mistaken - like the verdict form focused on Daniel Gerstenfeld.

30. In regard to damages, the court charged the jury that it must decide whether Daniel Gerstenfeld caused Harbin's harm and further stated that his, not Roundpoint's, conduct caused the harm if the jury found the elements were met.

31. The court also instructed the jury that Plaintiff's mental anguish and emotional distress damages could only be awarded if Harbin proved that Daniel Gerstenfeld made a false statement of a material fact to Ms. Harbin, on which she reasonably relied.

32. Likewise, the court's jury instruction regarding punitive damages stated that Harbin must prove that Daniel Gerstenfeld consciously or deliberately acted toward Harbin with fraud or malice, that the amount of the award is determined by the character and degree of Daniel Gerstenfeld's wrongful conduct and that Daniel Gerstenfeld was responsible for Plaintiff's harm.

33. The verdict form also created a heightened standard for damages. [*Id.*].

34. In fraud cases, the causation standard for damages is relaxed.

35.   The special interrogatory in the verdict form created essentially a
"but for" causation standard that was not attainable for emotional
distress damages. The questions, as set out in 3.e:

> e.   That Ms. Harbin's harm would not have happened without Daniel Gerstenfeld's
> statement?
> _____✓_____   YES
> _____   NO

[Doc. 201 at 3].

36.   By phrasing the damages inquiry as "would not have happened
without", Harbin would have to prove that the entirety of her
emotional distress was caused by, and would not have happened
without or but for the fraud.

37.   Further, the court excluded evidence of the ejectment action, which
was admittedly a foreseeable consequence of the foreclosure.

38.   The exclusion was based on Rule 403, but the evidence, while
prejudicial, was not unduly prejudicial and should have been
introduced.

39.   The jury verdict was also inconsistent in responding to the special
interrogatories. For example, the jury answered "no" to 2.b through
2.e., but answered "yes" to 3.b through 3.e. The questions, as set out
in 2.b through 2.e:

b.  That the false representation concerned a material existing fact?

      _____      YES

      ___✓___     NO

c.  That Daniel Gerstenfeld intended that Ms. Harbin rely on the statement?

      _____      YES

      ___✓___     NO

d.  That Ms. Harbin reasonably relied upon the false representation?

      _____      YES

      ___✓___     NO

e.  That Ms. Harbin's harm would not have happened without Daniel Gerstenfeld's statement?

      _____      YES

      ___✓___     NO

Jury Verdict for questions 3.b through 3.e:

b.  That the false representation concerned a material existing fact?

      ___✓___     YES

      _____      NO

c.  That Daniel Gerstenfeld intended that Ms. Harbin rely on the statement?

      ___✓___     YES

      _____      NO

d.  That Ms. Harbin reasonably relied upon the false representation?

      ___✓___     YES

      _____      NO

e.  That Ms. Harbin's harm would not have happened without Daniel Gerstenfeld's statement?

      ___✓___     YES

      _____      NO

[Doc. 201 at 2].

8

40. To permit damages beyond the automatic stay, or shortly thereafter, the Court required Harbin to establish she could have completed the plan.

41. This required Harbin to identify and present evidence from Carl Cummings, her husband, and Dianne Barrett, her mother.

42. The Court also threatened to strike Harbin's testimony about her mother helping her financially unless her mother testified.

43. Given Dr. Barrett's mental condition, Harbin could only present that testimony from her deposition, which resulted in a stilted, inconsistent, incomplete, and confusing series of testimony.

44. Then the Court excluded Rule 702 testimony about Harbin's ability to complete the bankruptcy plan from Suzanne Shinn.

45. The exclusion prevented potentially the most critical testimony in the case based on the Court's rulings on damages.

46. The jury asked four questions during deliberations.

47. Question 1 was "Could we as the jury only compensate the plaintiff the amount for her attorney fees?" [Doc. 197].

48.     Question 2 was "Do we have access to Fink's testimony? If so, where is it located in the evidence?" [Doc. 198][1]

49.     Question 3 was "If we the jury cannot come to an agreement in totality for a particular charge (i.e. a → e, yes or no), what will happen or what are our options? [Doc. 199]

50.     Question 4 was "Could we learn the amount of the attorney fees for the plaintiff?" and "Would there be an option to just write "Attorney Fees" for the compensation? [Doc. 200]

## STANDARD OF REVIEW

Rule 59(a)(1)(A) provides that the court "may, on motion, grant a new trial on all or some of the issues-and to any party. . . after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court." FED. R. CIV. P. 59(a)(1)(A). "When ruling on a Rule 59(a) motion for new trial, the trial judge must determine 'if in his opinion, the verdict is against the clear weight of the evidence ... or will result in a miscarriage of justice.'" *Cardona v. Mason*

---

[1] The document scanned in as Doc. 198 is actually Jury Question #4, as shown by the handwritten note at the bottom left of the page. This same jury question was also scanned into the court's cm/ecf system as Doc. 200. Plaintiff will be requesting that the court correct the record to include the actual second question from the jury identified in the facts above.

& *Dixon Lines, Inc.*, No. 16-22704-CIV, 2017 WL 3842599, at *1 (S.D. Fla. Sept. 1, 2017), *aff'd,* 737 Fed.Appx. 978 (11th Cir. 2018) (citing *Ins. Co. of N.A. v, Valente*, 933 F.2d 921, 923 (11th Cir. 1991)) (internal citations omitted).

> When a motion for a new trial is based on the weight of the evidence, the court should grant [the motion] when 'the verdict is against the clear weight of the evidence or will result in a miscarriage of justice, even though there may be substantial evidence which would prevent the direction of a verdict.... Because it is critical that a judge does not merely substitute [her] judgment for that of the jury, new trials should not be granted on evidentiary grounds unless, at a minimum, the verdict is against the great—not merely the greater—weight of the evidence.' *Ash v. Tyson Foods, Inc.*, 190 F. App'x 924, 926 (11th Cir. 2006) (quoting *Lipphardt v. Durango Steakhouse of Brandon, Inc.,* 267 F.3d 1183, 1186 (11th Cir. 2001)); *see also Williams v. City of Valdosta*, 689 F.2d 964, 973 (11th Cir. 1982).

*Kubiak v. S.W. Cowboy, Inc.*, No. 3:12-cv-1306-J-34JRK, at *4 (M.D. Fla. Oct. 12, 2016); *see also Weese v. Schukman*, 98 F.3d 542, 550 (10th Cir. 1996) (finding that a new trial is warranted based on the weight of the evidence when "the verdict is 'clearly, decidedly, or overwhelmingly' against the weight of the evidence"). "A court has more freedom to scrutinize the verdict when the case involves 'complex issues, facts not highly disputed, and events arguably marred by error." *See Williams*, 689 F.2d 946, 974 (11th Cir. 1982).

## ARGUMENT

### A.   The verdict was a compromise verdict and must be set aside and a new trial granted.

The jury verdict was the result of a compromise verdict and must be set aside and a new trial granted. "…[A] compromise verdict results from the jurors' impermissible attempt to 'resolve their inability to make a determination with any certainty or unanimity on the issue of liability by finding inadequate damages.'" *Reider v. Phillip Morris U.S., Inc.*, 793 F.3d 1254, 1260 (11th Cir. 2015) (quoting *Collins v. Marriott Int'l, Inc.*, 749 F.3d 951, 960 (11th Cir. 2014 (in turn quoting *Mekdeci ex rel. Mekdeci v. Merrell Nat'l Labs.,* 711 F.2d 1510, 1513 (11th Cir. 1983)). Generally, where a verdict is the result of compromise, "the jury compromised the issue of liability by awarding inadequate damages." *Burger King Corp. v. Mason*, 710 F.2d 1480, 1486-87 (11th Cir. 1983).

The jury compromised the financial damages. The trial evidence set the minimum threshold for financial damages. While the evidence created a range of financial harm, the difference between the March 2015 appraisal of $147,000 and the foreclosure sale price of one-hundred and twenty-four thousand, five hundred and sixty dollars and 16/100 cents set the baseline. [*Compare* Plaintiff's Exhibit 15 *with* Plaintiff's Exhibit

30]. The Defendant did not object to either exhibit. The Defendant also did not offer any evidence to dispute the valuation. Therefore, the evidence established a minimum financial loss to Plaintiff of twenty-two thousand four hundred and thirty-nine dollars and 84/100 ($22,439.84). However, the jury returned a verdict of only twelve thousand five hundred dollars ($12,500). And there was no evidence from which the difference between the actual minimum financial harm and the jury verdict can be explained.

While insufficient damages, in and of themselves, do not determine a compromise verdict, the court should look at the totality of the circumstances, including, but not limited to "highly contested liability, evidence of prior deadlock, or some inconsistency in the verdict for a court to conclude that the deficient damages resulted from an unlawful compromise." *Reider*, 793 F.3d at 1260 (quoting *Collins*, 749 F.3d at 960; citing *Burger King*, 710 F.2d at 1487 (examination of totality of the circumstances, including "any indicia of compromise apparent from the record and other factors which may have caused the jury to return a verdict for inadequate damages").

In determining whether a verdict was an impermissible compromise verdict, courts look to the totality of the circumstances. For example, where a jury found defendant liable but awarded the plaintiff damages less than the minimum amount stipulated by the defendant, the court cited the trial judge's admonition to the jury to finish their deliberations, among other reasons for a new trial. *Lucas v. American Manufacturing Co.,* 630 F.2d 291, 293 (5th Cir. 1980). In *Lucas*, the district court admonished the jury to complete their verdict or return later because of an approaching hurricane. *Lucas,* 630 F.2d at 293. A new trial was directed by the Fifth Circuit. *Id.* at 293-94; *see also Hatfield v. Seaboard Air Line Railroad Co.,* 396 F.2d 721, 724 (5th Cir. 1968) (Granting a new trial on liability and damages where the jury returned a verdict against the defendant on liability, but assessed the plaintiff's damages at one dollar, citing "particular circumstances as compelling that the issues of liability were strongly contested, confusion on the part of the jury with regard to contributory negligence and that the jury took two days to reach a verdict). *Id.* at 723.

The 11th Circuit affirmed a trial court's granting of a new trial based on a compromise verdict in *Mekdeci v. Merrell Nat. Labs*, 711 F.2d

1510, 1514-15 (11th Cir. 1983). In reaching this conclusion, the court relied on factors, such as, the fact that the damage award was inadequate, apparent confusion evident from the jury verdict form, and the jury's awarding "Nothing" for compensatory damages due the plaintiff even though the defendant never disputed the damages. 396 F.2d at 723.

*Mekdeci* examined "the sequence of events leading up to that verdict" stating that they furnished "ample additional evidence to sustain the district court's conclusion that it reflected a compromise." *Mekdeci*, 711 F.2d at 1415. These events included the length of deliberations, numerous communications from the jury to the judge indicating its uncertainty of causation, a request that the verdict include an explanation of the jury's reasons and indications that they were deadlocked before finally reaching a verdict. *Mekdeci*, 711 F.2d at 1415.

Like *Mekdeci*, the totality of the record in this case establishes that the verdict was an unlawful compromise verdict. That analysis should begin with the clearly inadequate financial damages and the jury questions. First, the amount of the verdict is inadequate and cannot be

squared with the evidence of financial harm. The jury questions likewise stress that the verdict was compromised. The jury asked four questions.

> Question 1: "Could we as the jury only compensate the plaintiff the amount for her attorney fees?" [Doc. 197].

> Question 2: "Do we have access to Fink's testimony? If so, where is it located in the evidence?" [Doc. 198][2]

> Question 3: "If we the jury cannot come to an agreement in totality for a particular charge (i.e. a → e, yes or no), what will happen or what are our options?" [Doc. 199].

> Question 4: "Could we learn the amount of the attorney fees for the plaintiff?" and "Would there be an option to just write "Attorney Fees" for the compensation? [Doc. 200].

The first and fourth questions dealt with damages. Twice, the jury asked whether they could compensate the Plaintiff only for attorneys fees. This coupled with the inadequate verdict underscores the need for a new trial based on an unlawful compromise verdict. *See Mekdeci*, 711 F.2d at 1514-15.

The first question (damages) suggests that the jury had resolved the question of liability. Yet, questions 2 and 3 indicate that liability was

---

[2] The document scanned in as Doc. 198 is actually Jury Question #4, as shown by the handwritten note at the bottom left of the page, which was also scanned into the Court's cm/ecf system as Doc. 200. Plaintiff will be requesting that the court supplement the record to include the second question from the jury.

still being deliberated. Question 2 related to the testimony of Jared Fink, the RoundPoint corporate representative. His testimony would exclusively relate to liability and would not bleed into the damages discussion other than potentially punitive damages, which were not awarded.

Question 3 inquired about what would happen if the jury could not reach an agreement on each type of fraud (intentional, reckless, mistaken). Question 3 further indicates that the jury felt that they might be at an impasse or deadlock, questioning what would happen if they couldn't reach an agreement. This is one of the factors noted by courts indicating a compromise verdict.

The jury was bouncing between damages and liability and when that is viewed in totality with the inadequate verdict and the questions on damages, the jury questions, specifically, the ones regarding whether they could just award attorney's fees reveals that the damages are inadequate and the result of an unlawful compromise. The jury confusion revealed by the questions (and verdict form), undisputed evidence of damages, and desire to only award attorneys fees, especially when the jury inquires about what happens if they can't all agree (after earlier

having seemingly decided liability) compels a new trial. *See Mekdeci*, 711 F.2d at 1514-15.

Affirming the district court's granting of a new trial the Eleventh Circuit stated,

> Several facts of this episode suggest a compromise. First, the jury took four days to reach a verdict. *Cf. Hatfield,* 396 F.2d at 723 (emphasizing that the jury deliberated for two days). Moreover, the parties 'strongly contested' the issue of liability. *See Hatfield,* 396 F.2d at 723. In fact, the jury's communications with the judge during the deliberations revealed its focus on that central controversy. Even more indicative, however, is the fact that the jury attempted to qualify its verdict. The effort to explain their verdict, coupled with the announcement of a deadlock soon after the judge denied the request, reinforces the notion that the jurors could not reach an agreement on the substantive issues. Finally, in light of these developments, the *Allen* charge may have had the unintended effect of compelling a compromise.

*Mekdeci*, 711 F.2d at 1515. This case is no different. The jury deliberated over the course of two days, liability was strongly contested by RoundPoint, the jury struggled with liability, the jury asked several questions about both damages and liability, the jury tried to qualify the damages by limiting them to attorney fees, and the jury appeared close to deadlocked, at least on certain fraud claims, with question 3. In holding that the trial court did not abuse its discretion, the Eleventh Circuit held that

> Taken together, these unique circumstances provide abundant indicia that the jury compromised the issues of liability and damages, therefore rendering them inseparable. When viewed in this context, any other explanation for the inadequate damage award is unpersuasive. On that basis, the district court certainly acted within its discretion when it ordered a new trial on all issues, rather than a partial retrial limited to a determination of damages.

*Mekdeci*, 711 F.2d at 1515. So too, here. No persuasive explanation for the outcome is presented by this record that supports any conclusion other than this was a compromised verdict.

"If the district court, in exercising its discretion, finds that a jury verdict was compromised, the remedy is to award a new trial as to both liability and damages." *Reider*, 793 F.3d at 1260 (citing *Collins,* 749 F.3d at 962. Indeed, "[A] jury verdict influenced by an improper compromise cannot stand and a complete new trial is required because liability and damages are inseparable." *Collins,* 749 F.3d at 962.

Here, the prevailing evidence and clearly inadequate verdict reflect a compromise verdict requiring a new trial on both liability and damages. Plaintiff requests that the Court grant a new trial.

**B.  In the alternative, the verdict is inconsistent and must be set aside and a new trial granted.**

"A verdict is inconsistent when there is no rational, non-speculative way to reconcile ... two essential jury findings.'" *Reider*, 793 F.3d at 1259 (quoting *Witt v. Norfe, Inc.,* 725 F.2d 1277, 1278 (11th Cir. 1984). In analyzing the verdict, the "district court 'must make all reasonable efforts to reconcile an inconsistent jury verdict and if there is a view of the case which makes the jury's answers consistent, the court must adopt that view and enter judgment accordingly.'" *Reider*, 793 F.3d at 1259 (quoting *Burger King,* 710 F.2d at 1489; citing *Atl. & Gulf Stevedores, Inc. v. Ellerman Lines, Ltd.,* 369 U.S. 355, 364, 825 S.Ct. 780, 786, 7 L.Ed.2d 798 (1962); *Aquachem Co. v. Olin Corp.,* 699 F.2d 516, 521 (11th Cir.1983).

"To determine whether a conflict in the verdict can be reconciled, a district court must ask whether the jury's answers could reflect 'a logical and probable decision on the relevant issues ... submitted.'" *Reider*, 793 F.3d at 1259 (quoting *Burger King,* 710 F.2d at 1489 (in turn. citing *Griffin v. Matherne,* 471 F.2d 911, 915 (5th Cir. 1973)).

Where the verdict "cannot be reconciled and the jury's answers to the written questions are inconsistent with each other or the verdict, the

district court has the discretion to direct the jury to further consider its answers and verdict, or order a new trial." *Reider*, 793 F.3d at 1259 (citing FED. R. CIV. P. 49(b)(3)-(4); *Burger King,* 710 F.2d at 1489.

The jury's verdict was inconsistent in finding "no" to subparts a through e of the special interrogatories 1 and 2, but then finding "yes" to subparts a through e of special interrogatory 3. The subparts in question were:

- "b. That the false representation concerned a material existing fact."

- "c. That Daniel Gerstenfeld intended that Ms. Harbin rely on the statement?"

- "d. That Ms. Harbin reasonably relied upon the false representation?" and

- "e. That Ms. Harbin's harm would not have happened without Daniel Gerstenfeld's statement?"

[Doc. 201 at 1-3]

The jury's response to these questions should be the same throughout the verdict form. Either the false representation concerned a material fact or it did not. Either Gerstenfeld intended that Harbin rely

on the statement or he did not. Harbin's reliance on the representation was reasonable or it wasn't. And Harbin's harm would not have happened with Gerstenfeld's statement or it would have.

The jury's findings as to these four sub questions is not reliant on whether the fraud was found to be intentional or reckless or negligent. Thus, the jury's findings under sections 1 and 2 cannot be reconciled with its findings under section 3. The jury's resultant verdict does not reflect a logical and probable decision on the relevant issues before it, but instead reflects its confusion of the task at hand and requires a new trial.

**C.    The Jury Verdict Should be Set Aside and a New Trial Granted as the Damages Awarded are Unsupported by the Evidence or Against the Great Weight of the Evidence.**

The Eleventh Circuit recognizes that an insufficient award of damages is a valid basis for ordering a new trial. *Sepulveda v. Burnside*, 380 F. App'x 821, 824 (11th Cir. 2010) *citing Mekdeci v. Merrell Nat'l Labs. Div. of Richardson-Merrell, Inc.*, 711 F.2d 1510, 1513 (11th Cir. 1983) ("Traditionally, an inadequate award of damages may constitute a sufficient reason to set aside a jury verdict.").

While courts are "deferential to the fact finder's determination of compensatory damage awards for intangible, emotional harms because

the harm is so 'subjective and evaluating it depends considerably on the demeanor of the witnesses[ ]'" *Griffin v. City of Opa-Locka*, 261 F.3d 1295, 1315 (11th Cir. 2001)" *Bozeman v. Pollock*, No. 14-CIV-60493-BLOOM/Valle, at *24 (S.D. Fla. Aug. 24, 2015) courts are much less deferential to quantifiable damages and previously quantified damages, such as loss of income, medical bills. Likewise, loss of equity in a home based on undisputed appraisals are quantifiable, fixed damages.

Where damages are uncontested courts have reversed a jury's failure to award damages once the defendant is found liable. In *Lucas v. American Mfg. Co.*, 630 F.2d 291, 292 (5th Cir. 1980)[3] the defendant stipulated before trial that the plaintiff incurred $5,748.74 in medical expenses and $2,753.56 in lost earnings as a result of his injuries. The jury returned a verdict for the plaintiff in the amount of $3,500. *Lucas* 630 F.2d at 292-293.

Reversing the trial court, the appellate court found,

"[o]nce the jury found the defendant liable for plaintiff's injuries, plaintiff was entitled to compensation. The defendant stipulated before trial that the plaintiff had incurred $8,503 in expenses as a result of his injuries; the

---

[3] "In *Bonner v. City of Prichard,* 661 F.2d 1206 (11th Cir. 1981) ( *en banc*), the Eleventh Circuit Court of Appeals adopted as precedent the decisions of the former Fifth Circuit issued before October 1, 1981." *Mekdeci v. Merrell Nat. Labs*, 711 F.2d 1510, 1513 n.2 (11th Cir. 1983)

verdict, however, was less than half of Lucas' stipulated out-of-pocket losses and reflected no award for pain and suffering. We find no evidentiary basis for the jury's award of only $3,500."

*Id.* at 293. See *also Hatfield v. Seaboard Air Line Railroad Company*, 396 F.2d 721, 722-23 (5th Cir. 1968) (Finding that a "verdict award of nominal damages in the teeth of an uncontroverted showing of substantial damages lacks any support in the record and cannot stand" where the uncontradicted evidence at the trial tended to show that Plaintiff suffered significant facial and eye injuries requiring surgery and plaintiff presented medical bills and lost wages **without objection** totalling $2,795.75).(emphasis added)

After finding Roundpoint guilty of mistaken or innocent misrepresentation, the jury returned a verdict of twelve thousand five hundred dollars ($12,500). [Doc. 201]. According to the verdict form, the damages were to compensate Plaintiff solely for "any *financial* damages caused by RoundPoint's Fraud." [Doc. 201 p. 3](emphasis in the original) In fact the jury found that Plaintiff had not proved she should recover for emotional pain and mental anguish because of RoundPoint's conduct and these were the only other compensatory damages sought by plaintiff. [Doc. 201 p. 3].

The evidence at trial was that the home sold at foreclosure for one-hundred and twenty-four thousand, five hundred and sixty dollars and 16/100 cents ($124,560.16). [Plaintiff's Exhibit 30]. While the plaintiff presented disputed evidence of a higher fair market value, the uncontested evidence at trial was that the home appraised for $147,000 on March 17, 2015. [Plaintiff's Exhibit 15].

Plaintiff offered into evidence without objection the March 2015 appraisal report. In fact, according to the report it was performed at the request of Roundpoint who was listed as "Lender/Client" at the top of the first page of the report. The evaluation was performed just a few months before the foreclosure and was the lowest valuation of the property presented to the jury. [Plaintiff's Exhibit 15].

The Defendant did not present to the jury any evidence of a lower appraisal amount for the relevant time period and did not question the accuracy of that amount. No evidence was before the jury that any other event, occurrence or market forces could have caused a decrease in value to the property between the time of the appraisal and June 3, 2015, the date of the foreclosure sale. And, Defendant did not offer any evidence or

reason to the jury that would undercut or provide the jury with any basis to devalue the house or loss of equity suffered by Plaintiff.

Thus, the evidence established a minimum financial loss to Plaintiff of twenty-two thousand four hundred and thirty-nine dollars and 84/100 ($22,439.84). The jury's award of damages is not supported by and is against the great weight of the evidence. This court should set aside the jury verdict and order a new trial on liability and damages.

While some courts have ordered a new trial as to damages only, the Supreme Court has stated, "[w]here the practice permits a partial new trial, it may not properly be resorted to unless it clearly appears that the issue to be retried is so distinct and separable from the others that a trial of it alone may be had without injustice." *Gasoline Products Company v. Champlin Refining Company*, 283 U.S. 494, 500 (1931).

Partial new trials as to damages alone have been rejected when it appeared that the error on the damage issue were intertwined with other issues, such as liability. *See Hatfield v. Seaboard Airline Railroad Company*, 5 Cir. 1968, 396 F.2d 721; Geffen v. Winer, 1957, 100 U.S. App. D.C. 286, 244 F.2d 375; *Schuerholz v. Roach*, 4 Cir. 1932, 52 F.2d 32, cert. denied, *Sheurholz v. Roach*, 287 U.S. 623, 53 S.Ct. 78, 77 L.Ed. 541.

Where questions of liability and the amount of damages are closely interwoven, if a new trial is to be granted, it should be granted in its entirety and not limited to the question of damages only. *Schuerholz v. Roach*, 4 Cir., 58 F.2d 32, 34, certiorari denied 287 U.S. 623, 53 S.Ct. 78, 77 L.Ed. 541. *See also Southern Railway Co. v. Madden*, 4 Cir., 235 F.2d 198, 204. Unless it *clearly* appears that the issue of damages was distinct and separable from the issue of liability, a new trial on the issue of damages alone should not be granted. *Gasoline Products Co. v. Champlin Refining Co.*, 283 U.S. 494, 500, 51 S.Ct. 513, 75 L.Ed. 1188.

Courts have long reasoned that the practice of granting a new trial as to damages only "should be adopted with caution only where it is clear that no prejudice will result to either party. It is appropriately followed only in furtherance of justice where the issues are not substantially connected or interwoven." *Bass v. Dehner.*, 21 F. Supp. 567, 568 (D.N.M. 1937) Ordering a new trial on all issues, the *Bass* court based its decision in part on the fact that the issue of liability had been strenuously contested throughout the trial, and "there was sharp conflict in the evidence respecting it" requiring approximately a day to submit the evidence regarding liability and that reasonable minds could well have

27

taken either view of the liability issue. The court also noted there was no contest concerning the injury and damages of the Plaintiff which were admitted. *Bass v. Dehner.*, 21 F. Supp. 567, 568 (D.N.M. 1937). The court found

> [t]he conclusion is inescapable that some of the jurors surrendered their convictions upon the issue of negligence while others surrendered theirs upon the issue of reasonably adequate damages in order to reach a verdict, and that the verdict did not represent the conscientious conviction of the entire jury upon either issue. It is well settled that such a verdict cannot be divided into good and bad.

*Bass v. Dehner.*, 21 F. Supp. 567, 568 (D.N.M. 1937).

Likewise, the evidence in this case concerning Plaintiff's economic damages based on the value of her house were uncontested, whereas liability and mental anguish damages were hotly contested. Consequently, the damages awarded by the jury reflect the jury's disregard for the court's instructions regarding damages, resulting in a damages award based on other improper reasons and not supported by and in contradiction to the evidence. This is further supported by the jury's repeated questions to the court as to whether it could award plaintiff only her attorney's fees as compensatory damages.

Thus, a new trial should be awarded on all issues.

**D.  The jury verdict should be set aside and a new trial granted because the court wrongfully struck, for cause, juror 18 Fabray Deshawn Turner**

The Court struck Ms. Turner, juror 18, for cause. Ms. Turner, in response to voir dire questions, responded that she (or a family member) had a negative experience with a mortgage company. As a result of that answer, she was questioned outside the presence of the other jurors. During that questioning, Ms. Turner explained that her mother had a negative experience with a mortgage company. Based on her mother's experience, the Court concluded that Ms. Turner could not be fair or impartial and struck her over Plaintiff's objection. To be sure, Ms. Turner never expressed any reservation about serving on the jury. Indeed, she answered all questions promptly and without hesitation. What's more, when asked, she testified that she could remain fair and impartial. To that end, Ms. Turner explained that she could listen to the evidence, apply the law, and do so fairly. Not a single time, despite her mother having a negative experience with a mortgage company, did Ms. Turner expressly or implicitly, stated that she could not be fair.

While courts have discretion to strike a juror for cause, the decision must at least begin with a "suggestion of impartiality". *U.S. v. Rhodes*,

177 F.3d 963, 965 (11th Cir. 1999) citing *United States v. Taylor,* 554 F.2d 200, 202 (5th Cir. 1977)). Ms. Turner's responses did not give a suggestion of impartiality. Jurors should be, and are properly, struck "[w]hen a prospective juror reveals actual bias, or when bias is implied because the juror has some special relationship to a party…." *Rhodes*, 177 F.3d at 965 (citing *United States v. Nell,* 526 F.2d 1223, 1229 n.8 (5th Cir. 1976)). Still, when a "juror demonstrates, however, that she can lay aside any opinion she might hold and render a judgment based solely on the evidence presented in court, then dismissal is not required." *Rhodes*, 177 F.3d at 965 (citing *United States v. Martin,* 749 F.2d 1514, 1517-18 (11th Cir. 1985)). To be fair, Ms. Turner did not say she can "lay aside" any prejudice or bias because she expressed none. But, she did say she could be fair and impartial.

"To exclude a prospective juror for cause, a party must demonstrate through questioning that the juror lacks impartiality." *Bell v. U.S.*, 351 F. App'x 357, 359 (11th Cir. 2009) (citing *Wainwright v. Witt*, 469 U.S. 412, 423, 105 S.Ct. 844, 852, 83 L.Ed.2d 841 (1985)). RoundPoint failed to establish that Ms. Turner lacked impartiality. To have done so, RoundPoint "'must demonstrate that the juror in question exhibited

actual bias by showing either an express admission of bias or facts demonstrating such a close connection to the present case that bias must be presumed.'" *Bell*, 351 F. App'x at 359 (quoting *U.S. v. Chandler*, 996 F.2d 1073, 1102 (11th Cir. 1993)). RoundPoint failed to establish either actual or implied bias. Actual bias exists if a juror is not "capable and willing to decide the case solely on the facts before him." *Bell*, 351 F. App'x at 359 (quoting *Rogers v. McMullen*, 673 F.2d 1185, 1190 (11th Cir. 1982)).

> In Alabama,
>
> To justify a challenge of a juror for cause, there must be a statutory ground as set forth in Ala. Code 1975, § 12-16-150, or some other matter that discloses absolute bias or favor and leaves nothing to the trial court's discretion. See, *Nettles v. State*, 435 So. 2d 146, 149 (Ala.Crim.App.), aff'd, 435 So. 2d 151 (Ala. 1983). See also, *Clark v. State*, 621 So. 2d 309, 321 (Ala.Crim.App. 1992).

*Ex Parte Myers*, 699 So. 2d 1285, 1287 (Ala. 1997). Nothing in Alabama Code section 12-16-150 justifies striking Ms. Turner for cause. *See* Ala. Code § 12-15-150.

The statutory list is not exhaustive. *See Motes v. State,* 356 So. 2d 712, 718 (Ala. Crim. App. 1978) (non-exhaustive list). However, the discretion is not unfettered to go beyond that list. *See Clark v. State,* 621

So. 2d 309, 321 (Ala. Crim. App. 1992). A proper basis must exist; "there must be some ground that indicates probable prejudice in order to disqualify a prospective juror." *Myers*, 699 So. 2d at 1287 (citing *Collins v. State,* 385 So. 2d 993, 999-1000 (Ala. Crim. App. 1979), reversed on other grounds, 385 So. 2d 1005 (Ala. 1980). "Where the ground is nonstatutory, it must be 'some matter which imports *absolute* bias or favor, and *leaves nothing* to the discretion of the trial court." *Myers*, 699 So. 2d at 1287 (emphasis added) (quoting *Nettles v. State,* 435 So. 2d 146, 149 (Ala. Crim. App.), affirmed, 435 So. 2d 151 (Ala. 1983)). Since the strike did not fall within the statutory grounds, it must be supported by "absolute bias or favor" that "leaves nothing to" discretion. *Id.* Here, there was no absolute bias; there was no absolute favor. As such, striking Ms. Turner was an abuse of discretion and a new trial should be granted.

In review of the exercise of discretion, the court should "look to the questions directed to and answers given by the prospective juror on voir dire." *McGowan v. State*, 88 So. 3d 916, 920-21 (Ala. Crim. App. 2010) (citing *Ex parte Cochran,* 500 So. 2d 1179 (Ala. 1985); *Holliday v. State,* 751 So. 2d 533, 535 (Ala. Crim. App. 1999)). The ultimate test, however, "for determining whether a strike rises to the level of a challenge for

cause is 'whether a juror can set aside their opinions and try the case fairly and impartially, according to the law and the evidence.'" *McGowan*, 88 So. 3d at 920-21 (quoting *Marshall v. State,* 598 So. 2d 14, 16 (Ala. Crim. App. 1991)); *see also Knop v. McCain*, 561 So. 2d 229, 232 (Ala. 1989) (ultimate test to be determined based on the questions asked and answers given).

Yet, "a prospective juror should not be disqualified for prejudices or biases if it appears from his or her answers and demeanor that the influence of those prejudices and biases can be eliminated and a verdict rendered according to the evidence." *Knop*, 561 So. 2d at 232 (citing *Fordham v. State*, 513 So. 2d 31, 34-35 (Ala. Crim. App. 1986); *Jarrell v. State*, 355 So. 2d 747, 749 (Ala. Crim. App. 1978). Assuming, and it is a hefty assumption, that Ms. Turner had a bias (or prejudice), nothing suggested that this perceived bias would influence the proceedings. After all, Ms. Turner testified unequivocally that she could be fair and impartial and decide the case based on the facts and law.

Answers given by prospective jurors on voir dire "fall into two categories: 1) those affecting the defendant's choice of peremptory challenges (those light impressions which may fairly yield to the

testimony); and 2) those affecting the juror's qualifications (those strong and deep impressions which will close the mind against the testimony)." *Knop*, 561 So. 2d at 233 (citing *Ex parte Beam*, 512 So. 2d 723, 724 (Ala. 1987); *see also Depree v. Thomas*, 946 F.2d 784, 788 (11th Cir. 1991) ("The trial judge must consider whether the prospective juror has such a fixed opinion, based on his bias, that he 'could not judge impartially the guilt of the defendant.' (quoting *Patton v. Yount,* 467 U.S. 1025, 1035, 104 S.Ct. 2885, 2891, 81 L.Ed.2d 847 (1984)). Here, the answers clearly fell within the "light impression" category that would support a peremptory challenge rather than a "strong and deep impression" that would impact a juror's qualifications. Whether an individual is so partial that he must be disqualified is "plainly [a question] of historical fact." *Yount,* 467 U.S. at 1036.

Based on the historical fact of this record, Ms. Turner should not have been struck for cause. It was error. A new trial is justified and should be granted.

**E.     The jury verdict should be set aside and a new trial granted because the Court wrongfully prohibited evidence necessary to prove intentional fraud.**

The Defendant moved for summary judgment on willful fraud. [Doc. 82]. The Defendant also moved in limine to preclude evidence of punitive damages. [Doc. 84; Doc. 92]. The Court denied the motion for summary judgment, including in its ruling discussions about half-truths. [Doc. 99]. The Court also denied the Defendant's motion to preclude evidence to support punitive damages, which as the Court noted in fn 1, requires a showing of intent. [Doc. Doc. 100 at 1-3]. Yet, this Court then severely limited the evidence of intent permitted to (1) show intent and (2) to support a punitive damages award, e.g., how they treated Harbin compared to how they treat others. The trial court erred by precluding, or otherwise limiting, the evidence necessary to establish punitive damages.

**F.     The jury verdict should be set aside and a new trial granted because the Court wrongfully denied the suppression claim and failed to charge the jury on half-truths.**

The Defendant moved for summary judgment on fraud. [Doc. 82]. The Court denied the motion for summary judgment, including a discussion about half-truths. [Doc. 99]. When Plaintiff requested an

opportunity to clarify the claims (and amend the complaint), the Court denied the motion and to the extent necessary struck the amended complaint. This fraud claim was clearly a hybrid claim that Alabama courts have discussed and analyzed. A half-truth has been described as follows:

> A half-truth is defined, in general, as an assertion which is literally true so far as it goes but which would be materially qualified were additional facts brought out rather than concealed. *SeeAmerican Bonding Co. of Baltimore v. Fourth National Bank*, 206 Ala. 639, 91 So. 480, 482-483(1921), quoted in *Jackson Company v. Faulkner*, 55 Ala. App. 354, 315 So.2d 591, 599-600(1975). *See also, First Virginia Bankshares v. Benson*, 559 F.2d 1307 (5th Cir. 1977)." *Nobility Homes, Inc. v. Ballentine*, 386 So. 2d 727, 732 (Ala. 1980). Justice Jones, went on to reason that,
>
> > It is only through the assertion of certain selected facts that the other party is induced to act at all, but it is the concealment or suppression of other facts which induces him to act contrary to his interest. By definition, then, a fraud resulting from a half-truth consists of both the commission of an act and, at the same time, an omission.

*Nobility Homes*, 386 So. 2d at 732; *see also Ala. River Grp., Inc. v. Conecuh Timber, Inc.*, 261 So. 3d 226, 244 (Ala. 2017) ("equivalent of concealment").

Alabama Courts have applied half-truth claims to both fraud and suppression claims. *Id.* But, some courts have recognized that a half-truth fraud case is more aligned with suppression than misrepresentation. Still, the descriptions regularly cross-over. And this was an important aspect of the claim and one relied on by the Court in denying the motion in limine on punitive damages. [*See* Doc. 100 at 1-3].

The half-truth evidence was also important to a hyper-technical sneaky defense that Gerstenfeld's statement was "literally true". In essence, RoundPoint was arguing that it suppressed that the foreclosure sale was proceeding rather than misrepresented that the sale was postponed. Understandably, RoundPoint would not call it a suppression, but however RoundPoint described it ("literally true") is the equivalent of saying that Gerstyenfeld suppressed the information rather than misrepresented it. This error was compounded by the instructions in directing the jury's attention to Gerstenfeld rather than to RoundPoint.

Additionally, at the close of the evidence Plaintiff moved to have teh court amend the pleadings to conform to the facts, again requesting that the suppression claim be allowed to be considered by the jury. The court denied this motion.

The trial court erred by precluding, or otherwise limiting, the fraud claims necessary to establish intentional fraud and punitive damages.

**G.  The jury verdict should be set aside and a new trial granted because the verdict form directed the jury to consider only Gerstenfeld's actions and state of mind rather than those of the Defendant RoundPoint.**

Pursuant to Federal Rule of Civil Procedure 49, the district court has authority to order a new trial based upon its identification of inconsistencies on a general verdict form. *See* FED. R. CIV. P. 49(b); *see also Christiansen v. Wright Medical Technology, Inc.*, 851 F. 3d 1203 (11th Cir. 2017). A court's application of Rule 49 is reviewed only for abuse of discretion. *See Wilbur v. Corr. Servs. Corp.*, 393 F. 3d 1192, 1199 (11th Cir. 2004). The initial inquiry is whether the general verdict is inconsistent with the jury's answers to the special interrogatories. *See Witt v. Norfe, Inc.*, 725 F. 2d 1277, 1278 (11th Cir. 1984). A verdict is inconsistent when there is "no rational, non-speculative way to reconcile" two findings which are essential to the case. *Reider*, 793 F. 3d at 1259 (quoting *Witt*, 725 F. 2d at 1278). And where the responses cannot be reconciled, the court has the authority to order a new trial. *Id.*

The Defendant is RoundPoint, not Daniel Gerstenfeld. The issue is corporate knowledge, not agent knowledge. *See J. Pruett Payne Co. v.*

*Jackson*, 203 So. 2d 443 (Ala. 1967). In *Roland v. Cooper*, the court recognized that the knowledge of the corporation is the knowledge of the agent and the knowledge of the agent is knowledge of the corporation. *Roland v. Cooper*, 768 So. 2d 400, 404-05 (Ala. Civ. App. 2000) (citing Ala. Code § 8-2-8). Indeed, an inquiry into the agent's intent does not necessarily provide a defense to the legal entity and its intent. *See Birmingham News Co. v. Horn*, 901 So. 2d 27, 60 (Ala. 2004) ("'corporations cannot escape liability in fraud cases by showing that the agent through whom it acted was without knowledge of the true facts. The issue in those cases is whether the corporation had knowledge of the true facts.'") (quoting *Shelter Modular Corp. v. Cardinal Enters., Inc.*, 347 So. 2d 1334, 1338 (Ala. 1977).

Based on the record, it was clear that

- Gerstenfeld did not know what "temporary suspension" meant.

- Gerstenfeld thought it meant that the sale was postponed.

- RoundPoint never intended to postpone the sale.

- RoundPoint disputed that Gerstenfeld told Harbin that the sale was postponed.

Even in closing arguments, RoundPoint argued, over objection, about what Gerstenfeld knew rather than what RoundPoint knew. Placing the focus on the individual rather than the corporation, misdirected the jury.[4] The issue in this case was not what Gerstenfeld knew (or should have known), but what RoundPoint knew (or was imputed to it). Rather than direct the jury's attention to RoundPoint, it was directed to Gerstenfeld. And that misdirection creates a reversible error where Gertsenfeld was not a party and did not testify.

Instead of viewing RoundPoint as a corporate entity charged with knowledge and acknowledging Gerstenfeld as a component in the day to day life of that corporation, the focus was exclusively on Gerstenfeld and what he said on May 29, 2015.

**H.   The jury verdict should be set aside and a new trial granted because the Jury Instructions directed the jury to consider only Gerstenfeld's actions and state of mind rather than those of the Defendant RoundPoint.**

A review of a jury instruction is a highly contextual analysis. The court will examine all the jury instructions as a whole to determine if the

---

[4] Plaintiff recognizes that the charge included an instruction that Gerstenfeld equals RoundPoint and Roundpoint equals Gerstenfeld, but that instruction does not cure the defective charge and how it misdirected the jury in its deliberations away from RoundPoint's knowledge.

instructions fairly and adequately address the issues and correctly state the law. *See Christopher v. Cutter Laboratories*, 53 F. 3d 1184, 1190-91 (11th Cir. 1995). The allegations of the complaint, the evidence presented before the jury, and the arguments of counsel must all be considered together in order to fully understand whether the jury understood the issues or was misled. *See Cutter Laboratories*, 53 F. 3d at 1190-91.

To determine whether a jury instruction was erroneous because it reflected an incorrect legal standard, and thus plain error, a court must review a number of factors, not all of which must be satisfied. *See Cutter Laboratories*, 53 F. 3d at 1194-95. Among those factors are whether the instruction in dispute was related to an issue at the heart of the case and if the opposing party emphasized, or relied upon, the incorrect legal standard in its closing argument. *Id.* Another factor is whether the record indicates that the jury relied on the erroneous instruction. *Id.* The record can be indicated by the questions submitted by a jury. *See Industrial Dev. Bd. Of Town of Section, Ala. V. Fuqua Industries, Inc.*, 523 F. 2d 1226, 1239 (5th Cir. 1975) (Question submitted by jury indicated it was concerned with and confused by jury instruction which made the issue of that jury instruction prejudicial.)

In *Hunt v. Liberty Lobby*, the court found plain error where the instructions allowed the jury to find liability under two alternate theories, one of which was contrary to law, and the court was unable to make any certain determination as to which standard or theory the jury was trying to apply. *Hunt v. Liberty Lobby*, 720 F. 2d 631, 647 (11th Cir. 1983). In this case, the error was created by continually referring to Gerstenfeld in the verdict form rather than RoundPoint. And based on the outcome, there is no way to determine whether the jury applied the correct standard, which is to say, an analysis of RoundPoint's knowledge and intent.

Jury instructions merit a new trial where the instructions give the jury "a misleading impression or inadequate understanding of the law and the issues to be resolved." *Id*. (quoting *Stuckey v. Northern Propane Gas Co.*, 874 F.2d 1563, 1571 (11th Cir. 1989)). Indeed, the Eleventh Circuit has noted that reversal on instructions only occurs where there is "substantial and ineradicable doubt as to whether the jury was properly guided in its deliberations." *U.S. S.E.C. v. Big Apple Consulting USA, Inc.*, 783 F.3d 786, 804 (11th Cir. 2015) (citing *McCormick v. Aderholt*,

293 F.3d 1254, 1260 (11th Cir. 2002)).

For these reasons and those set forth above in section G relating to the verdict form, the court should grant Plaintiff's motion for a new trial.

## I. The jury verdict should be set aside and a new trial granted because the Court erroneously charged the jury on causation and damages

The Court charged the jury that to establish damages, the Plaintiff must establish that the damages would not have occurred without the fraud. That charge created a heightened standard of proof to establish proximate cause to prove her damages than required by Alabama law. To be sure, in Alabama, the causation standard is relaxed (or extended) for intentional torts).

The Alabama Supreme Court characterized the framework of proximate cause as a "complex doctrine" requiring courts to use *flexibility* in applying the standard "in order to serve adequately the underlying policy considerations regarding the various tort actions." *Shades, Etc. v. Cobbs, Allen Hall Mortg*, 390 So. 2d 601, 608-611 (Ala. 1980). In short, the court held that in the context of "intentional torts" such as intentional or reckless misrepresentation a court's analysis should result in "extended liability and [that] the rules of proximate causation are more

<u>liberally applied</u> to hold a defendant liable." *Shades, Etc.*, 390 So. 2d at

608-611. (emphasis added)

Examining the issue of damages in the context of a fraud claim, the

Alabama Supreme Court identified what it called a "Controlling Principle

of Law." *Id.* at 607. The Court stated,

> in cases of intentional or aggravated acts there is an <u>extended liability</u> and the rules of proximate causation are <u>more liberally applied</u> than would be justified in negligence cases. This is especially true in cases of fraud where proximate cause is often articulated as a requirement of reasonable reliance where but for the misrepresentation or concealment it is likely the plaintiff would not have acted in the transaction in question. In those instances where the defendant is found to have acted intentionally it is <u>proper that a more remote causation result in liability</u> than would be true in negligence cases. The <u>policy to be followed</u> is that liability <u>should fall on the wrongdoer</u> rather than to permit the victim to go uncompensated.

*Id.* (emphasis added)

The court further noted in the 1980 case that a difference between

causation in the context of an intentional tort, such as fraud, versus a

negligence claim is that it has long been understood and generally

accepted that "the 'foreseeability' limitation will be cast aside [for]

intentional torts, as to which it has been said often enough that there is

44

more extended liability." *Shades, Etc.*, 390 So. 2d at 609 (*citing Prosser, Law of Torts* (4th Ed. 1971), § 43 at p. 263).

The court went on to note, "[t]his trend is dictated by the policy that liability, even though potentially tremendous, should be imposed on the wrongdoer rather than the victim be[ing] uncompensated. Hence, <u>even very remote causation may be found</u> where the defendant acted intentionally." *Shades*, 390 So. 2d at 609. (also citing the *Restatement (Second) of Torts* § 435A (1966) (that "even though the consequences were unexpectable, with an intentional tort, the defendant is liable for it even though had he been negligent he would not be so liable."))

The court also noted that the standard would apply to cases involving reckless misconduct citing with approval the 5th Circuit case of *Johnson v. Greer,* 477 F.2d 101, pp. 106-07 (5th Cir. 1973). Additionally, *Johnson* maintained that the more liberal standard required courts to examine "the aggravated nature of his action [as] a matter which should be taken into account in determining whether there is a sufficient relationship between the wrong and plaintiff's harm to render the actor liable. Specifically, the factors to be taken into account are the tortfeasor's intention to commit a wrongful act, the degree of his

moral wrong in so acting, and the seriousness of the harm intended." *Johnson,* 477 F.2d at 106-07; *see also Seidel v. Greenberg*, 108 N.J. Super. 248, 260 A.2d 863 (1969) (Identifying factors such as a defendant's "intention to commit a wrongful act, the degree of his moral wrong in acting, and the seriousness of the harm" as important factors in determining whether he is liable for resulting unintended harm).

Rejecting the trial court's overly stringent application of the law regarding proximate cause to damages for an intentional or reckless misrepresentation, *Shades, Etc.* noted that such damages are based on "some social idea of justice or policy" <u>focusing on the three functions of</u> "compensation, deterrence, and loss spreading." *Shades, Etc.*, 390 So. 2d at 611 (emphasis added). Weighing these three functions, the Alabama Supreme Court provided guidance to all Alabama courts, including those sitting in diversity, in determining damages in the context of intentional tort cases as requiring "extended liability and the rules of proximate causation [be] more liberally applied to hold a defendant liable" and stating, "[i]f, weighing the moral fault of a defendant and applying the rules of causation liberally, the consequences have <u>some reasonably close connection with defendant's conduct and the harm threatened</u>, and in

themselves, using hindsight, are not deemed preposterous or far-fetched, defendant <u>should be held liable</u>. Concepts of policy, fairness and justice are entitled to great weight." *Id.* at 611-12 (emphasis added).

**J.   The jury verdict should be set aside and a new trial granted because the Court created prejudicial error when it required sidebar for impeachment of RoundPoint's Representative with prior deposition testimony.**

Over Plaintiff's objection, the Defendant was permitted to replace Jared Fink, its original corporate representative, with Tyler McGee, its replacement corporate representative for trial. The Court did permit the Plaintiff to depose McGee. Of course, a court can permit substitution of a corporate representative when the former designee left employment, as was represented by RoundPoint. *See Capitol Records, Inc. v. MP3tunes, LLC*, 07-cv-9931 (WHP) *19, 2014 WL 503959 *11 (S.D.N.Y. Jan. 29, 2014); *see also Couch, Inc. v. Visitors Flea Mkt., LLC*, 6:11-cv-1905-Orl-22TBS *5 (M.D. Fla. Jun. 11. 2014) (Finding late designation of corporate representative was substantially justified and harmless where prior corporate representative was no longer employed by corporation).

However, the "corporate representatives cannot necessarily testify as interchangeable conduits for the collective knowledge of a corporation." *Capitol Records, Inc.*, 07-cv-9931 (WHP) *19 (citing *L-3*

*Comm'n Corp. v. OSI Sys., Inc.*, o2-cv-9144 (PAC), 2006 WL 988143 *2 (S.D.N.Y. April 13, 2006)). Rule 30(b)(6) "aims to prevent a corporate defendant from thwarting inquiries during discovery, then staging an ambush during a later phase of the case." *Rainer v. American Forest and Paper Assoc., Inc.*, 26 F. Supp. 2d 82, 95 (D.D.C. 1998).

When a change in corporate representative is permitted, the prior deposition testimony remains that of the legal entity and is not that of the individual. RoundPoint was bound by the testimony of Fink because he was deposed as the representative. Simply changing representatives does not decouple RoundPoint from that testimony. *See* FED. R. CIV. P. 32(a)(3); *see also Coach, Inc. v. Visitors Mkt., LLC*, 6:11-cv-1905-Orl-22TBS (M.D. Fla. Jun. 11, 2014) (Noting that a party's deposition can be used for any purpose); *Sunflower Condo. Ass'n, Inc. v. Owners Ins. Co.*, 16-cv-2946-WJM-NYW (D. Colo. Oct. 9, 2018) ("...Defendant will be allowed, if appropriate, to impeach Mr. Reed based on allegedly inconsistent Rule 30(b)(6) deposition testimony of Plaintiff's former designee.") The trial sidebar requirement unnecessarily hindered the examination of the RoundPoint representative and was highly prejudicial

to the flow of the testimony and the jury's perception that the Plaintiff was responsible for the delays.

**WHEREFORE, PREMISES CONSIDERED**, the Plaintiff respectfully requests that the Court set aside the jury verdict and grant a new trial and any other and further relief that the Court deems appropriate.

**DATED: March 1, 2022**

Respectfully submitted:

*/s/ Jason L. Yearout*
Jason L. Yearout
 (ASB-4487-T80J)
Attorney for Plaintiff
**RUBIO LAW FIRM, P.C.**
490 Wildwood No. Cir., Suite 150
Birmingham, Alabama 35209
t. 205.443.7855
f. 205.443.7853
e. jyearout@rubiofirm.com

*/s/ M. Stan Herring*
M. Stan Herring
 (ASB-1074-n72m)
Attorney for Plaintiff
**WATTS & HERRING, LLC**
301 19th Street N.
Birmingham, AL 35203
t. 205.879.2447
f. 888.522.7167
e. Stan@WattsHerring.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on **March 1, 2022**, I served a true and correct copy of the foregoing on counsel of record or any *pro se* parties by electronic filing with the Clerk of the Court, which will provide notice to counsel, electronic mail, properly addressed U.S. Mail, hand delivery, or as indicated below to the following:

*Attorneys for RoundPoint Mortgage*

Shaun K. Ramey
**MCGLINCHEY STAFFORD**
424 Church Street, Suite 1000
Nashville, TN 37219
t. 615.762.9080
e. sramey@mcglinchey.com

T. Dylan Reeves
**MCGLINCHEY STAFFORD**
424 Church Street, Suite 1000
Nashville, TN 37219
e. dreeves@mcglinchey.com

*/s/ Jason L. Yearout*
OF COUNSEL